# EXHIBIT B

 **CT Corporation**

**Service of Process Transmittal**
01/06/2016
CT Log Number 528427289

**TO:** Ashley Harper
Waste Management, Inc.
1001 Fannin St Ste 4000
Houston, TX 77002-6711

**RE:** **Process Served in California**

**FOR:** WASTE MANAGEMENT OF CALIFORNIA, INC.  (Domestic State: CA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | DONALD TUMBLIN, Pltf. vs. WASTE MANAGEMENT OF CALIFORNIA, INC., etc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Proof of Service, Complaint, Exhibit(s), Order |
| **COURT/AGENCY:** | Central District of California - U.S. District Court, CA<br>Case # 215CV09664DSFPLA |
| **NATURE OF ACTION:** | Employee Litigation - Discrimination - Age |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 01/06/2016 at 14:45 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 21 days after service, not counting the day of receipt |
| **ATTORNEY(S) / SENDER(S):** | David Hiller<br>LAW OFFICE OF DAVID W. HILLER, ESQ.<br>225 S. Lake Ave., Suite 300<br>Pasadena, CA 91101<br>626-559-1984 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 01/07/2016, Expected Purge Date: 01/17/2016<br><br>Image SOP<br><br>Email Notification,  Nancy Shoebotham  nshoebot@wm.com<br><br>Email Notification,  Monique Martinez (General SOP)  mmarti41@wm.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 818 West Seventh Street<br>Los Angeles, CA 90017 |
| **TELEPHONE:** | 213-337-4615 |

Page 1 of  1 / KC

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| DONALD TUMBLIN, | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| _Plaintiff(s)_ | ) |
| v. | ) |
| WASTE MANAGEMENT OF CALIFORNIA, INC., a | ) |
| California Corporation; PACKAGE AND GENERAL | ) |
| UTILITY DRIVERS LOCAL UNION NO. 396, a labor | ) |
| organization; and DOES 1-10, | ) |
| | ) |
| _Defendant(s)_ | ) |

Civil Action No. 2:15-cv-09664-DSF-PLA

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  LAW OFFICE OF DAVID W. HILLER, ESQ.
225 S. Lake Ave., Suite 300
Pasadena, CA 91101

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date: __January 4, 2016__

_Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No. 2:15-cv-09664-DSF-PLA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ _____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .


I declare under penalty of perjury that this information is true.


Date: _____          _____
                                          *Server's signature*

                                 _____
                                          *Printed name and title*


                                 _____
                                          *Server's address*

Additional information regarding attempted service, etc:

1  LAW OFFICE OF DAVID W. HILLER, ESQ.
   David Hiller, SBN 275436
2  225 S. Lake Ave., Suite 300
   Pasadena, CA 91101
3  626-559-1984
   626-578-5349 (fax)
4  david@dwhesq.com

5  LAW OFFICE OF JONATHAN J. MOON
   Jonathan Moon, SBN 282522
6  1604 W Olympic Blvd, Suite 1008
   Los Angeles, CA 90015
7  213-245-5298
   323-375-1756 (fax)
8  jmoon@jmoonlaw.com

9  Attorneys for Plaintiff Donald Tumblin

10

11

12                    UNITED STATES DISTRICT COURT

13                   CENTRAL DISTRICT OF CALIFORNIA

14

15  DONALD TUMBLIN,                    CASE NO: 2:15-cv-9664

16        Plaintiff                    COMPLAINT FOR DAMAGES

17     vs.                             1. BREACH OF COLLECTIVE
                                          BARGAINING AGREEMENT
18  WASTE MANAGEMENT OF
    CALIFORNIA, INC., a California     2. BREACH OF DUTY OF FAIR
19  Corporation; PACKAGE AND              REPRESENTATION
    GENERAL UTILITY DRIVERS
20  LOCAL UNION NO. 396, a labor       3. AGE DISCRIMINATION UNDER
    organization; and DOES 1-10,         ADEA
21
          Defendants                   4. AGE DISCRIMINATION UNDER
22                                        FEHA

23                                     5. WRONGFUL TERMINATION IN
                                          VIOLATION OF PUBLIC POLICY
24
                                       6. RETALIATION
25

26                                     DEMAND FOR JURY TRIAL

27

28
                                  - 1 -

1

## JURISDICTION & VENUE

2     1.   This action asserts claims under the Labor Management Relations

3 Act ("LMRA"), 29 U.S.C. § 141 *et seq.*; under the Age Discrimination in

4 Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; and under California's Fair

5 Employment and Housing Act ("FEHA"), Government Code §12900 *et*

6 *seq.* Subject matter jurisdiction is conferred on this Court by 28 U.S.C. § 1331

7 29 U.S.C. § 185(a), and 29 U.S.C. § 626(c). Plaintiffs' state law claims arise

8 out of a common nucleus of operative facts and are within the supplemental

9 jurisdiction of the Court.

10     2.   All parties reside and have their primary place of business within this

11 judicial district, and the events described below giving rise to this complaint took

12 place within this judicial district.

13

## PARTIES

14     3.   Plaintiff Donald Tumblin is an adult qualified to bring suit on his own

15 behalf, and resides within this judicial district, in the County of Los Angeles,

16 State of California.

17     4.   Defendant Waste Management of California, Inc. ("Waste

18 Management") is a California Corporation, which maintains offices and does

19 business within this judicial district, in the County of Los Angeles, State of

20 California.

21     5.   Defendant Package and General Utility Drivers Local Union No. 396

22 ("Local 396") is a labor organization, affiliated with the International Brotherhood

23 of Teamsters, and which maintains offices and does business within this judicial

24 district, in the County of Los Angeles, State of California.

25     6.   Does 1 to 10 are unnamed because their identities have yet to be

26 ascertained. Each Doe defendant acted within the scope of his or her agency

27 or employment.

28

- 2 -

**FACTUAL ALLEGATIONS**

7.    Plaintiff was hired by Waste Management in 1981, and had worked continuously and as his sole means of employment as a garbage truck driver for Waste Management for 33 years, prior to his termination November 20, 2014, which gives rise to this complaint.  Plaintiff is a 54 year-old black male.

8.    Plaintiff is a member of Defendant Package and General Utility Drivers Local Union No. 396.

9.    Plaintiff's employment with Waste Management was subject to the Collective Bargaining Agreement ("CBA") attached as Exhibit A.

10.   On or about July 16, 2014, Plaintiff cut his arm while at work.  The cut was minor but required stitches.  Plaintiff was written up for being negligent on the job.  This write up was without justification and Plaintiff filed a grievance with Local 396 contesting the write-up.  Plaintiff was told by management to withdraw his grievance.  Plaintiff refused.  Local 396 failed to take any action in regard to the grievance Plaintiff filed.   On information and belief, Waste Management and Local 396 maintain and promote a hostile attitude towards older drivers, characterizing them as slow, lazy, and willing to violate company protocol.  Waste Management and Local 396 favor younger drivers over older drivers, and discriminate against older drivers by, among other things, using unjustified write-ups and selective and improper enforcement of company policies as a pretext for discharging older drivers.

11.   On or about November 7, 2014, Plaintiff arrived at work and was told he would be taking a urine test, which Plaintiff has done always without incident on a semi-regular basis over the last 20-plus years the tests have been given. During the test, Plaintiff was told multiple times that he had not produced enough urine, and each time, the sample he had just produced would then be discarded, and he would be told to produce another sample.  Despite complying with all directions of the test administrators, providing four samples, and

- 3 -

1    producing an amount of urine multiple times what was required under DOT

2    guidelines, within days after the test Plaintiff was notified that he was being

3    terminated from his employment of 33 years for "refusing" to provide a urine

4    sample.

5       12.   Plaintiff filed a grievance with Local 396 the day he was notified of

6    his termination, protesting the termination. Local 396 subsequently completely

7    failed to represent Plaintiff's interests or act on his behalf in regard to his

8    termination. Local 396 did not request arbitration and review of the decision to

9    terminate Plaintiff's employment, and, upon information and belief, failed to

10   perform even a cursory investigation or inquiry into the matter. Under the terms

11   of the CBA, a decision to arbitrate Plaintiff's termination should have been

12   made within 5 days of Plaintiff filing a grievance. However, Local 396, without

13   explanation, waited more than 8 months before deciding and then notifying

14   Plaintiff that Local 396 would not arbitrate Plaintiff's termination.

15       13.   On or about August 11, 2015, Local 396 sent Plaintiff notice that it

16   would not be pursing arbitration of his termination. Upon information and belief,

17   Local 396 was complicit with Waste Management in the wrongful termination of

18   Plaintiff. Plaintiff's age and his previous filing of a grievance were motivating

19   reasons or the sole reason behind the actions of Waste Management and Local

20   396.

21       14.   Plaintiff has complied with and exhausted all procedures under the

22   CBA for protesting his termination, and has exhausted all administrative

23   remedies and obtained the necessary right to sue letters. This lawsuit is timely

24   and proper.

25

26

27

28

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### BREACH OF COLLECTIVE BARGAINING AGREEMENT

### 29 U.S.C. § 185(a)

### (Against Defendant Waste Management)

15. Plaintiff was discharged on or about November 20, 2014 by Defendant Waste Management.

16. This discharge was without just cause, in violation of the terms of the CBA.

17. Defendant Package and General Utility Drivers Local Union No. 396 failed to represent Plaintiff's interest under the CBA.

18. As a result of the foregoing, Plaintiff has sustained damages in an amount according to proof at time of trial.

### SECOND CLAIM FOR RELIEF

### BREACH OF DUTY OF FAIR REPRESENTATION

### 29 U.S.C. § 185(a)

### (Against Defendant Local 396)

19. Plaintiff was discharged on or about November 20, 2014 by Defendant Waste Management.

20. This discharge was without just cause, in violation of the terms of the CBA.

21. Defendant Package and General Utility Drivers Local Union No. 396 failed to represent Plaintiff's interest under the CBA. On August 11, 2015, Local 396 notified Plaintiff it would not pursue arbitration of his termination.

22. As a result of the foregoing, Plaintiff has sustained damages in an amount according to proof at time of trial.

**THIRD CLAIM FOR RELIEF**

**AGE DISCRIMINATION**

**AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA")**

**29 U.S.C. § 623**

**(Against all Defendants)**

23.   Plaintiff is over the age of 40.

24.   Plaintiff was intentionally discriminated against in his employment by Defendant Waste Management and discharged because of age.

25.   Plaintiff was intentionally discriminated against by Defendant Package and General Utility Drivers Local Union No. 396 because of his age.

26.   As a result of the foregoing, Plaintiff has sustained damages in an amount according to proof at time of trial.

**FOURTH CLAIM FOR RELIEF**

**AGE DISCRIMINATION**

**CALIFORNIA FAIR EMPLOYMENT & HOUSING ACT ("FEHA")**

**California Government Code § 12900 *et seq***

**(Against all Defendants)**

27.   Plaintiff was employed by Defendant Waste Management.

28.   Plaintiff was a member of Defendant Package and General Utility Drivers Local Union No. 396.

29.   Plaintiff was discharged on or about November 20, 2014.

30.   Plaintiff was over the age of 40 at the time he was discharged.

31.   Plaintiff's age was a substantial motivating reason for Defendant Waste Management's decision to discharge Plaintiff.

32.   Plaintiff's age was a substantial motivating reason for Defendant Package and General Utility Drivers Local Union No. 396's discrimination against Plaintiff.

33.  As a result of the foregoing, Plaintiff has sustained damages in an amount according to proof at time of trial.

34.  In doing these acts, Defendants Waste Management and General Utility Drivers Local Union No. 396 acted with malice, oppression, and fraud, justifying an award of exemplary and punitive damages.

## FIFTH CLAIM FOR RELIEF
### WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY
### California Government Code § 12940(a)
### (Against Defendant Waste Management)

35.  Plaintiff was employed by Defendant Waste Management.

36.  Plaintiff was discharged on or about November 20, 2014.

37.  Plaintiff's age, and his filing a grievance contesting his July 2014 write up, were substantial motivating reasons for Defendant Waste Management's decision to discharge Plaintiff, in violation of the public policy of the State of California.

38.  As a result of the foregoing, Plaintiff has sustained damages in an amount according to proof at time of trial.

39.  In doing these acts, Defendant Waste Management acted with malice, oppression, and fraud, justifying an award of exemplary and punitive damages.

## SIXTH CLAIM FOR RELIEF
### RETALIATION
### California Government Code § 12940(h)
### (Against Defendant Waste Management)

40.  On or about October 2014, Plaintiff filed a grievance in opposition to Waste Management's practice of discriminating against older driver employees by writing-up these older drivers for pretextual reasons.

41.   Plaintiff was subsequently discharged on or about November 20, 2014.

42.   Plaintiff's filing of this grievance was a substantial motivating reason for Waste Management's decision to discharge Plaintiff.

43.   As a result of the foregoing, Plaintiff has sustained damages in an amount according to proof at time of trial.

44.   In doing these acts, Defendant Waste Management acted with malice, oppression, and fraud, justifying an award of exemplary and punitive damages.

1

## PRAYER

2        WHEREFORE, Plaintiffs request the following relief:

3          1.   General and compensatory damages in an amount according to

4  proof;

5          2.   Special and future damages in an amount according to proof.

6          3.   Punitive damages in an amount according to proof;

7          4.   Costs of suit, including attorneys' fees, under the relevant provisions

8  of state and federal law.

9          5.   Such other relief as may be warranted or is just and proper.

10

11

## DEMAND FOR JURY TRIAL

12        Plaintiff requests trial by jury in this matter.

13

14  DATED: December 16, 2015     LAW OFFICE OF DAVID W. HILLER, ESQ.

15

16

17                   By:     /s/ David Hiller

18                       David W. Hiller

19                       Attorney for Plaintiff

20

21                 LAW OFFICE OF JONATHAN J. MOON

22

23

24                   By:     /s/ Jonathan Moon

25                       Jonathan J. Moon

26                       Attorney for Plaintiff

27

28

1

## **EXHIBITS TO COMPLAINT**

2

3    EXHIBIT A: Collective Bargaining Agreement................................................... 11

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

# AGREEMENT

## Between

# WASTE MANAGEMENT DISTRICTS OF COMPTON, LONG BEACH, SUN VALLEY

## AND

# PACKAGE AND GENERAL UTILITY DRIVERS LOCAL UNION NO. 396

### Affiliated with International Brotherhood of Teamsters

May 11, 1013 through September 30, 1017



## TABLE OF CONTENTS

Page

ARTICLE 1. COVERAGE OF AGREEMENT ............................................................ 1

ARTICLE 2. UNION RECOGNITION ...................................................................... 1

ARTICLE 3. SAFETY AND HEALTH ....................................................................... 3

ARTICLE 4. WORK WEEK, WORKING HOURS AND OVERTIME ......................... 5

ARTICLE 5. SENIORITY .......................................................................................... 8

ARTICLE 6. DISCHARGE, WARNINGS AND PROTEST ...................................... 10

ARTICLE 7. GRIEVANCE AND ARBITRATION .................................................... 11

ARTICLE 8. MANAGEMENT RIGHTS .................................................................. 12

ARTICLE 9. PROTECTION OF RIGHTS ................................................................ 13

ARTICLE 10. LEAVES OF ABSENCE .................................................................... 13

ARTICLE 11. SUBCONTRACTING ........................................................................ 14

ARTICLE 12. SUCCESSOR ..................................................................................... 14

ARTICLE 13. NO STRIKE ....................................................................................... 14

ARTICLE 14. HOLIDAYS ....................................................................................... 14

ARTICLE 15. SICK LEAVE ..................................................................................... 16

ARTICLE 16. VACATION ........................................................................................ 16

ARTICLE 17. WESTERN CONFERENCE OF TEAMSTERS PENSION TRUST ........ 17

ARTICLE 18. HEALTH AND WELFARE BENEFITS .............................................. 18

ARTICLE 19. DRIVE AUTHORIZATION AND DEDUCTION ................................ 20

ARTICLE 20. CREDIT UNION ............................................................................... 20

ARTICLE 21. DRIVERS LICENSE .......................................................................... 21

ARTICLE 22. NON DISCRIMINATION ................................................................. 21

ARTICLE 23. PHYSICAL EXAMINATIONS AND TESTING FOR ALCOHOL
          AND CONTROLLED SUBSTANCES _____ 22

ARTICLE 24. MAINTENANCE DEPARTMENT _____ 22

ARTICLE 25. EXTRA CONTRACT AGREEMENTS _____ 23

ARTICLE 26. FUNERAL LEAVE _____ 23

ARTICLE 27. JURY DUTY _____ 23

ARTICLE 28. TERM. _____ 24

# AGREEMENT

THIS AGREEMENT is made and entered into by and between PACKAGE AND GENERAL UTILITY DRIVERS LOCAL UNION NO. 396, affiliated with the International Brotherhood of Teamsters, hereinafter referred to as the "Union," and Waste Management Compton District, Long Beach District, Sun Valley District, hereinafter referred to as the "Company" or "Employer."

NOW, THEREFORE, in consideration of the mutual promises and agreements herein contained, the parties hereto agree as follows:

## ARTICLE I. COVERAGE OF AGREEMENT

Section 1. This Agreement shall have application only to all Employees in the following described unit for which Employees the Employer recognizes and acknowledges the Union as the sole and exclusive bargaining agent:

| Included: | All Drivers, Swampers, Helpers, Yardmen Person, 1st Mechanic, 2nd Mechanic, 1st Welder, Bin Repairman, Painters and Truck Maintenance Employees employed by the Employer at its plants located at 407 E. El Segundo Blvd., Compton, CA 90222, 1970 E. 213th Street, Long Beach, CA. 90810, and 9081 Tujunga Ave., Sun Valley, CA 91352. |
| Excluded: | All other office Employees, Office Clerical Employees, Professional Employees, Outside Salesmen, Guards, and Supervisors as defined in the N.L.R.A. as amended. |

Section 2. Should the Employer move its base of operations covered by this Agreement from its addresses above and relocate same within the territorial jurisdiction of Local Union No. 396, said removal and relocation shall not impair coverage under this Agreement.

Section 3. The Employer agrees to notify the Union one week in advance of any new classifications or new positions for existing Employees covered under this Agreement. Wages for all new classifications shall be negotiated and mutually agreed to.

## ARTICLE 2. UNION RECOGNITION

Section 1. RECOGNITION. The Employer recognizes the Union as the exclusive representative of the Employees covered by this Agreement for collective bargaining. It shall be a condition of continued employment that all Employees of the Employer covered by this Agreement who are members of the Union in good standing and those who are not members on the effective date of this Section shall, on the thirtieth (30th) day following such dates, become and remain members in good standing in the Union. It shall also be a condition of continued employment that all Employees covered by this Agreement and hired on or after the effective date of this Section shall, on the thirtieth (30th) day following the beginning of such employment, become and remain members in good standing in the Union. On and after the sixtieth (60th) day or the ninetieth (90th) day of employment an Employee as determined in accord with Section 1 of Article 5, shall be deemed to be a regular Employee. The effective date of this clause shall be

the date of execution, or the effective date of this Agreement, whichever shall be the later. Good standing, for the purposes of this Agreement, shall mean and be defined as, the timely payment of the regular dues and initiation fees uniformly required of all members of the Union.

Section 2. NEW EMPLOYEES. When new or additional Employees are needed, the Employer shall notify the Union of the number and classification of Employees needed. The Union shall nominate applicants for such jobs. The Employer shall choose between any nominees of the Union and any other applicants on the basis of their qualifications for the job. No applicants will be preferred or discriminated against by the Employer or the Union because of membership or non-membership in the Union.

Section 3. NEW HIRES AND TERMINATIONS. The Employer agrees to notify the Union within thirty (30) days of all new hires and terminations.

Section 4. THIRTY-SIX-HOUR NOTICE. The Union agrees that written notice shall be given to the Employer at least thirty-six (36) hours before any Employee is to be removed from his employment by reason of his failure to obtain or maintain his membership in good standing in the Union.

Section 5. CHECK-OFF DUES DEDUCTIONS. The Employer shall deduct on the first payday of each month from the wages due and payable to those Employees who authorize the Employer in writing to do so, the regular monthly dues and initiation fees. All monies so deducted by the Employer shall be forwarded to the office of the Union by the Employer as promptly as may be consistent with the Employer's accounting procedures but in no event later than the fifteenth (15th) day of the month in which these monies were deducted.

The Union will hold harmless the Employer against any claim or obligation which may be made by anyone by reason of the deduction of union dues and initiation fees, including the cost of defending against any such claim or obligation.

The Employer shall add to the list submitted by the Union the names of all new Employees covered by the Agreement who authorize check-off forms, hired since the preceding list was submitted, and delete the names of any Employees who are no longer employed. Where an Employee who is on check-off is not on the payroll during the week in which the deduction is to be made or has no earnings or insufficient earning during that week or is on leave of absence, the Employee must make arrangements with the Local Union to pay such dues in advance.

Section 6. UNION BULLETIN BOARD. The Employer agrees to provide a glass enclosed bulletin board in a visible area. Postings by the Union on such board shall be confined to official business of the Union. Bulletin board shall be located in close proximity to time clock(s) regularly used by Employees covered under this agreement. Keys to bulletin board shall be provided to the Union.

Section 7. UNION VISITATION. An authorized, full-time representative of the Union shall have access to the Employer's premises during working hours for the purpose of adjusting disputes, investigating working conditions, collection of dues, and ascertaining that this Agreement is being adhered to. The Union or its representative shall utilize exercise of this privilege in such a manner so as not to interrupt the operations of the Employer. Union

representatives shall notify the Employer when they enter the premises. Union representatives agree to wear all applicable personal protective equipment at all times while in a work area (e.g., shop floor, loading yard).

Section 8. STEWARDS. The Employer recognizes the right of the Local Union to designate job stewards. The authority of job stewards so designated by the Local Union shall be limited to, and shall not exceed, the following duty and activity.

The transmission of information, which shall originate with and is authorized by the Local Union, or its officers, provided such information has been reduced in writing.

Job stewards have no authority to take strike action, or any action interrupting the Employer's business, except as authorized by official action of the Local Union. The Employer and Union recognize these limitations. The Employer shall have the authority to impose proper discipline, including discharge, in the event the job steward has taken unauthorized strike action, slow down, or work stoppage in violation of this Agreement.

Recognizing the importance of the role of Union Stewards in resolving differences or disputes between the Employer and its Employees, the Employer reaffirms its commitment to the active involvement of Union Stewards in such processes in accordance with the terms of this Article.

In situations where an Employee reasonably believes an investigatory interview will result in disciplinary action and the Employee specifically and affirmatively requests representation by a Union Steward or designated alternate, the Employer will honor such request if it proceeds with the investigatory interview. It is understood, however, that this Article shall not interfere with legitimate Employer prerogatives (for example, the Employer is not required to postpone an interview because a Union Steward or the designated alternate is unavailable), the Employer may carry on its inquiry without interviewing the Employee, and the Employer has no duty to bargain with any Union Steward or the designated alternate who may be permitted to attend the investigatory interview. Moreover, the Employer need not honor such request if the interview is called merely to inform an Employee of disciplinary action already decided upon.

Section 9. BARGAINING UNIT WORK. The Employer agrees to respect the jurisdiction rules of the Union and shall not direct or require its Employees or persons other than the Employees in the bargaining unit here involved to perform work which is recognized as the work of the Employees in said units, except in cases of emergency and training purposes.

Section 10. SUPERVISORS WORKING. Supervisors will not ordinarily perform work assigned to Employees covered by this Agreement, but may do so in case of emergencies, training, assistance and repair work when necessary to return equipment to service, to cover situations brought about by Employee(s) being absent or tardy, and in other situations where a sufficient number of qualified bargaining unit Employees are not immediately available.

## ARTICLE 3. SAFETY AND HEALTH

Section 1. SAFETY AND HEALTH. The Employer shall make reasonable provisions for the safety and health of its Employees during the hours of their employment. All protective devices,

wearing apparel and other equipment, necessary to properly protect Employees from injury and foul weather shall be provided for a cost assumed by the Employer.

Whenever an Employee is required to wear a specified type of uniform or article of dress, the cost of furnishing, laundering, or cleaning the same shall be assumed by the Employer. When any uniform is lost or damaged by the Employer, such Employee shall be held responsible for the cost of a replacement uniform, except for normal wear and tear.

Section 2. SAFE EQUIPMENT. The Employer shall not require Employees to take out on the streets or highways, any vehicle that is not in safe operating condition or equipped with the safety appliances prescribed by law. It shall not be a violation of this Agreement where Employees refuse to operate such equipment, until such equipment has been approved as being safe by the maintenance or mechanical department.

Employees shall immediately or at the end of their shift, report all defects of equipment. Such reports shall be made in multiple copies, one copy to be retained by the Employer. The Employer shall not ask or require any Employee to work with or take out equipment that has been reported by any other Employee as being in an unsafe operating condition, until same has been approved as being safe by the maintenance or mechanical department.

Section 3. OVERLOADS, CERTIFICATES AND EQUIPMENT VIOLATIONS. The Employer shall pay for all overloads and equipment violations except in the case of trucks equipped with weighing devices where overloads shall be the Driver's responsibility provided the weighing devices are working properly.

All time lost due to delays as a result of overloads or certificate violations involving federal, state or city regulations, which occur through no fault of the Driver, shall be paid for exclusive of meal periods.

Employer and Employees are subject to the provisions of the Department of Transportation Regulations affecting the waste industry including limitations on hours of work. For those Employees who are required to have a valid commercial driver's license, loss or suspension of such shall be grounds for discipline up to and including discharge. Employees are required to promptly notify the Company of any change to their CDL driving privileges.

If a Driver reasonably estimates a container is overweight, he should report the concern to Management. The Employer will investigate to determine if the container is overweight and if so will contact the customer and make reasonable efforts to resolve the situation.

Section 4. WORKBOOT REIMBURSEMENT. The Employer may require any or all Employees to wear and maintain in acceptable condition a safety work boot meeting the Employer's specifications, in which case the Employer will provide such Employees after one (1) year of service with an annual boot reimbursement not to exceed one hundred fifty dollars ($150.00) per year payable to Employees as reimbursement for amounts spent by Employees toward the cost of purchasing approved work boots. Employer shall reimburse Employees within 10 days after Employee provides receipt to Employer. Effective January 1, 2014 the boot reimbursement shall increase to two hundred dollars ($200.00) per year for each employee.

Section 5. If an Employee is injured on the job and before leaving work that day reports same to the Employer, appears to require immediate medical care and is taken by the Employer to the Employer's Physician or Clinic he shall be paid for the hours he worked and the hours spent at the Employer's Physician or Clinic, or the local Hospital Emergency Room up to a maximum of twelve (12) straight time hours of pay on the day of the injury, subject to the overtime provision in the current Bargaining Agreement. The Employees shall return to work the day of the injury if the Physician releases him to work. The up to twelve (12) hours of pay time ceases at the time he/she is released by the Physician or Clinic and not returned to work or upon admission to the Hospital.

## ARTICLE 4.  WORK WEEK, WORKING HOURS AND OVERTIME

Section 1. The wage rates and classifications covered by this Agreement are set forth in the schedules identified as Appendix "A" attached hereto and made a part hereof.

Section 2. Eight (8) hours of work, exclusive of meal periods shall constitute a workday. The workweek shall consist of five (5) consecutive workdays. One and one-half (1½) times the regular hourly rate of pay shall be paid all Employees for all hours worked in excess of eight (8) hours per day and forty (40) hours in a work week. Employees who work Sunday shall receive two (2) times their regular hourly rate of pay for all hours worked.

The Company may implement a four (4) day ten (10) hour consecutive workweek if the Company is either attempting to obtain new business or maintain existing business. The Company shall not implement a four (4) day ten (10) hour consecutive workweek for arbitrary and capricious reasons and/or for the purposes of avoiding overtime. The Company and the Union will meet and negotiate the specific terms of a four (4) day ten (10) hour consecutive workweek prior to the implementation of such a workweek.

All regular Employees shall be guaranteed forty (40) hours in a workweek. No senior Employees shall be forced onto a four (4) consecutive day ten (10) hour consecutive workweek. Employees who perform work on a four (4) ten (10) hour consecutive workweek shall do so voluntarily or bid according to seniority.

With respect to Saturday routes, the Company will pay a minimum of six (6) hours. The Company shall post requests for Saturday work at least seventy-two (72) hours before the workday, unless the Company does not have 72 hours notice in advance of the need for said work. If an insufficient amount of volunteer Employees are available, the Company will assign work by seniority from the bottom of the seniority list.

Section 3. TIME WORKED. All Employees covered by this Agreement shall be paid for all time spent in service of the Employer. The Employer shall designate a start time for each Employee.

Section 4. MEAL PERIODS AND BREAKS

(a) Meal Periods. Employees who are scheduled to work more than five (5) hours in a day must take an unpaid meal period of at least, but not longer than, thirty (30) minutes within their first (1st) five (5) hours of work. Employees who work in excess of five (5) hours but less than six (6) hours may voluntarily waive their meal period, and will be presumed to have done so if the meal period is not taken. Employees who are scheduled to work more than ten (10) hours per day are provided a second (2nd) thirty (30) minute unpaid meal period. An Employee may choose not to take this second (2nd) meal period so long as the Employee took the first (1st) meal period and finishes his or her shift within twelve (12) hours. If an Employee does not take a second (2nd) meal period in such circumstances, it is presumed that he or she waived that meal period. If an Employee is unable to finish his or her shift within twelve (12) hours, the Employee must take the second (2nd) unpaid thirty (30) minute meal period. Where a second (2nd) meal period is required, it should be taken to the extent practicable near the tenth (10th) hour of work.

(b) Rest Periods. Employees shall be authorized, and must take, a paid rest period of at least, but not longer than, fifteen (15) minutes for every four (4) hours worked. As far as practicable, Employees must take the rest period within the middle of each four (4) hour increment.

(c) Recording Time. Employees must record their actual time worked. Depending upon an Employee's position and location, work time may be recorded by computer, handwritten documents or on pre-printed time sheets. Each Employee is responsible for maintaining his or her own time record. Employees should record the time work begins and ends, as well as the beginning and ending time of each meal period. Employees must also record any departure from work for any non-work-related reason.

Should an Employee fail to record his or her time, or should a known error occur, the matter should be reported to a supervisor. Employees may not mark, erase, or make changes on time cards. Altering, falsifying, and/or tampering with time records, or recording time on another Employee's time record is prohibited.

(d) Notification. If circumstances do not permit an Employee to take his or her meal (or rest period), it is the Employee's duty and responsibility to notify his or her supervisor that he or she was not permitted to take a meal (or rest) period.

(e) Arbitration. Any complaint arising in connection with the application or interpretation of this Article, including but not limited to claims regarding alleged missed meal and rest periods and alleged payments is therefore subject to the grievance and arbitration procedure set forth in Article 7 of this Agreement.

Nothing in this Section shall prohibit the Employer from modifying its policy consistent with applicable state law.

Section 5. START TIME. The Employer shall designate a starting time for each Employee covered by this Agreement.

**Section 6. RATES OF PAY AND CONDITIONS NOT REDUCED BY THIS AGREEMENT.**

The Employer agrees that no Employee member of the Union, who, prior to the date of this Agreement, was receiving more than the rate of wages designed in this Agreement or conditions better than those herein provided for the class of work in which he was engaged, shall suffer a reduction in the rate of wages or conditions of employment through the operation of or because of the adoption of this Agreement; and in addition, no Employee will receive less than the general increases as negotiated and provided in Appendix "A" of this Agreement on the dates herein specified.

**Section 7. WORK PERFORMED IN A HIGHER CLASSIFICATION.** When an Employee is requested to do work in a higher classification, he shall receive the higher rate of pay for the entire day in which such work is performed. When an Employee is requested to work in a lower classification, he shall receive his regular rates of pay for the entire day in which such work is performed.

**Section 8. ITEMIZED PAYCHECKS.** The Union shall have the right to inspect the paycheck of any Employee covered by this Agreement after the bank has released a paycheck to the Employer. The Employer shall make the time cards and payroll records for those Employees covered by this Agreement available to any full time paid representative of the Union at any time within six (6) months from the date paid. This inspection shall take place on the premises of the Employer unless otherwise provided for.

On a monthly basis, Employees may request a print out of their banked Vacation, FHP, Personal Days, and Sick Days with one week's advanced notice.

**Section 9. METHOD OF PAYMENT.** All Employees covered by this Agreement shall be paid in full each week with a check that includes pay for all hours worked during that previous workweek, less required deductions and deductions authorized by the Employee. The Employer shall have a designated payday Thursday or Friday.

    a) Rates of pay provided for by this Agreement shall be minimums.

    b) Times shall be computed from the time that the Employee is ordered to report to work and registers in, until he is effectively released from duty.

    c) Employees required to work on Saturdays shall receive a minimum of a six (6) hours guarantee.

**Section 10. SWING DRIVER PAY.** Whenever an Employee is removed from his regular route and directed to cover an open route for the entire day he/she shall be paid at the higher classification for the entire day (Swing Driver rate as additional $2.00 per hr).

**Section 11. EMPLOYEE DEFINITION.** A regular full time Employee covered by this Agreement shall be defined as an Employee who has completed the probationary period specified herein, dating from the Employee's most recent date of hire, and who is scheduled to regularly work a minimum of forty (40) hours per week.

## ARTICLE 5. SENIORITY

**Section 1. DEFINITION AND PROBATION.** For the purposes of this Agreement, seniority is defined as the length of unbroken service with the Employer dating from the regular Employee's last date of hire. A regular Employee is defined as an Employee who has completed ninety (90) continuous workdays of employment unless the Employee is hired by the Employer within thirty (30) days of the termination of his or her employment of at least nine (9) continuous months with another employer engaged in the solid waste collection business, in which case the probationary period shall be only sixty (60) continuous calendar days. Each facility will maintain separate seniority lists. The Employer will post a regularly updated seniority list at each facility, in an area accessible to Employees, and a copy of each list will be sent to the Union each time it is updated.

**Section 2. LAYOFF.** In all cases of layoff and recall from layoff, seniority among regular Employees within the department and job classification (i.e. Commercial, Residential, Roll-Off, Scout, Mechanics, etc.) within their department shall govern. A senior Employee who is laid off may displace a less senior Employee, regardless of differences in classification, provided the Employee has the skill and ability to immediately perform the job without training. Employee shall be recalled as set forth above, provided the affected Employee responds to the call of the Employer, which call shall be sent to the last known address of the Employee, as filed with the Employer by telephone, regular and/or certified mail, and to the Union by telephone or regular and/or certified mail and reports for duty within thirty-six (36) hours from time of dispatch of said call to the affected Employee. The giving of the aforementioned call shall fulfill the obligation of the Employer under this provision of this Agreement.

**Section 3. LOSS OF SENIORITY.** Seniority will be lost and employment shall end for any of the following reasons:

  a) Discharge for just cause.

  b) Voluntary quit.

  c) Retirement.

  d) Failure to report to work within three (3) working days after recall.

  e) Absence for two (2) consecutive workdays without notice to Employer.

  f) Layoff for lack of work in excess of twelve (12) months.

  g) Acceptance of Workers' Compensation for permanent disability.

**Section 4.** An Employee transferred to a job outside of the bargaining unit shall retain his accumulated seniority as of the date of transfer and shall continue to accumulate seniority during the period that he is outside of the bargaining unit. If the Employer returns such Employee to the bargaining unit within one (1) year he shall be credited with all such seniority.

When an Employee transfers to another location operated by the Employer represented by this Local Union as a result of a request on the part of the Employee for such a transfer, the Employee shall retain his Company seniority for the purpose of accrued pay and benefits (i.e., wage rate, accrued Vacation time, etc.), but shall move to the bottom of the seniority list of his new domicile for all other purposes. An Employee who transfers to another location represented by this Local Union as a result of a Company initiated transfer shall retain his Company seniority for all purposes, and shall dovetail into the seniority list of his new domicile.

Section 5. OVERTIME. The Employer will offer non-regular daily and/or weekly overtime work to Employees in the work category to which they are regularly assigned according to seniority and qualifications as dictated by production demands. Overtime acceptance by Employee shall not interfere with the normal completion of his/her weekly work schedule, as determined by Employer, should acceptance of such overtime place Employee in jeopardy of exceeding maximum hours allowed by the D.O.T. If the Employees do not accept in sufficient numbers, the Employer will assign the Employees within the work classification with the least seniority to work where they are needed. The Employees will be required to work such hours and overtime as may be assigned by the Employer.

Section 6. VACATED AND NEWLY ESTABLISHED POSITIONS.

a) POSTING. Whenever there is a permanent opening in a bargaining unit job classification that the Company desires to fill on a permanent basis, the Company will post an announcement of such opening on the Company bulletin board for five (5) working days. The posting will contain a brief description of the duties of the classification and the necessary qualifications for it.

b) APPLICATIONS. A full-time hourly Employee who has completed his/her probationary period may apply for the opening by signing the notice during the posting period.

c) FILLING THE OPENING. Selection from among qualified applicants will be made by the Company using the following procedure; 1) primary consideration to the Employee's seniority, 2) prior experience in the duties of the position, 3) qualifications, and 4) ability. The Employee so selected shall be given a trial period not to exceed thirty (30) days at the new position, unless extended by mutual agreement. No such trial period will be necessary for employees bidding into a position within their category. During the trial period, the Employee shall be paid his regular rate of pay. If it is determined by the Company that the Employee has not demonstrated satisfactory performance in his new position, he shall be returned to his former position. In the event the Employee awarded the bid does not successfully complete the thirty (30) day trial period, the position shall be offered to the next qualified bidder from the original bid listing. Thereafter, the Employer shall not have to award the position to any other bidder, and may fill the position at its discretion.

d) LIMITATIONS ON BIDDING. This job bidding procedure shall only apply to the initial vacancy and any subsequent vacancy may be filled at the discretion of the Company. A successful applicant may not bid on another permanent opening for a period of twelve (12) months from the date of his transfer into the opening into which he has successfully bid. Successful bidder must remain on the job for a period of twelve (12) months unless a new

vacancy is created for which the Employer would otherwise hire from the street. An Employee who fails to qualify for a position during the trial period shall not be eligible to bid on another posting in the same classification for a period of six (6) months.

c) UNION NOTIFICATION. The Employer will fax a copy of the opening announcement at the time it is posted, as well as the identities of the successful bidder and unsuccessful bidders, upon determination of the successful bidder.

Section 7. TRAINING. The Employer shall make reasonable efforts to provide training for Employees seeking to be certified to perform other than their normal and customary job (other classification.) All Employees shall be afforded the opportunity to apply for training. Training should be done with pay. Any Employee utilized to train another Employee for any portion of workday, will be compensated at one dollar ($1.00) per hour above his or her regular hourly rate of pay, for the entire workday in which such training work is performed.

## ARTICLE 6.  DISCHARGE, WARNINGS AND PROTEST

Section 1.  DISCHARGE AND DISCIPLINE.  It is mutually agreed that the Employer has the right to discharge or otherwise discipline any Employee for just cause.  Discipline is intended to be corrective and timely.  Discipline must be given within ten (10) working days of notification or the knowledge or receipt of any governmental agency report (if applicable). Disciplinary write-ups will be cumulative within three (3) separate tracks which shall include 1) Absenteeism/Tardiness, 2) Accidents, and 3) General Work Rules.  Progressive discipline shall follow a four-step process as outlined below.

    1)  Verbal Warning
    2)  Written Warning
    3)  Written Warning or Suspension
    4)  Termination

Section 2.  CARDINAL INFRACTIONS.  The exception to Section 1 above shall apply to the following termination offenses where progressive discipline need not be followed.

    a)  Proven Theft and/or Dishonesty (including Scavenging if proven theft.)

    b)  Failure to work as directed.

    c)  Giving out route or billing information to any unauthorized person.

    d)  Willful, wanton, malicious, or unsafe conduct.

    e)  Reckless Driving.

    f)  Unprovoked assault while on duty, including lewd conduct or abusive conduct and language.

g) Intoxication, drinking or the use or sale of alcoholic beverages or possession or sale or use of illegal substances while on the Employer's premises or on or in an Employer owned or leased vehicle.

h) Carrying of unauthorized passengers.

i) Fighting or possession of firearms or weapons on the Employer's property or in the Employer's vehicle.

j) Harassment as defined in Title VII.

k) Willful damage to Employer's property.

l) Failure to report any accident immediately.

m) Life Critical Rule Violations (Appendix B)

Section 3. NOTIFICATION. Employees to whom written warning notices are issued must sign the warning notice to attest only to the fact that they have received a copy of said warning notice. The Employer agrees to notify the union within forty-eight (48) hours by telephone, regular and/or certified mail or fax, or if a non-workday as soon as possible, when any regular Employee is terminated or suspended for any reason.

Section 4. PROBATIONARY EMPLOYEES. Notwithstanding the foregoing, the Employer will have the right to discharge or terminate, without cause, any Employee during the first ninety (90) continuous workdays of their employment, if said Employee is not satisfactory to the Employer. Any such discharge or termination will not constitute a grievance against the Employer, and will not be subject to the provisions of Article 7 of this Agreement.

Section 5. RIGHT TO PROTEST. The Union will have the right to investigate the discipline or discharge of any regular Employee covered by this Agreement and may protest any such discipline or discharge believed by the Employee and/or the Union to be unjustified, provided the Employee or Employees involved voluntarily consent in writing, to said protest by the Union. Any such protest must be submitted for settlement as provided for in Article 7 of this Agreement. Any protest not submitted for settlement as provided will be waived for all purposes. Time limits can be extended by mutual agreement.

Section 6. WARNING NOTICE PERIOD. A warning notice as herein provided shall not remain in effect for a period of more than twelve (12) months from the date said warning notice is delivered to the Employee.

ARTICLE 7. GRIEVANCE AND ARBITRATION

Section 1. The parties hereto recognize and agree that industrial peace is to be desired at all times and to that end it is agreed that for the purpose of adjusting differences, misunderstandings, disputes or controversies arising between the parties the following procedures shall be followed;

a) Grievances shall be limited to disputes arising as to the meaning or application of any provisions set forth in this Agreement. Any Employee who believes he has a grievance may present it orally to his supervisor for adjustment with or without his Union representative. If the grievance is not settled by this procedure, and the Employee wishes to carry it further, he must file his grievance in writing with the Union and a copy sent to the Employer no later than ten (10) working days following the event giving rise to his grievance. The parties hereto shall exercise every amicable means to settle or adjust such grievance.

b) In the event of failure to accomplish this settlement or adjustment of such grievances by the above procedure within five (5) working days after the date the grievance is filed with the Employer, the matter may be referred to arbitration by written notice by either party to the other party to be received within thirty (30) days from completion of the final step of the grievance procedure (the date the grievance is filed in writing). The parties shall try to agree upon an arbitrator no later than five (5) working days from the date of such notice. If no agreement is reached within the five (5) working day period, an arbitrator shall be selected from a list of seven (7) arbitrators submitted by the Federal Mediation and Conciliation Service, by alternate striking of names until one name remains. Lot or toss of coin shall determine the party making the first deletion.

Whenever possible, the parties shall attempt to utilize the system of "Expedited Arbitration" in discharge cases. Utilization of "Expedited Arbitration" shall not require either party to waive any rights regarding the manner in which they shall defend their rights, such as limiting the number of witnesses to be called or the filing of briefs etc.

c) The arbitrator shall have no power to alter, amend, change or to subtract from any of the terms of this Agreement, but shall determine only whether or not there has been a violation of this Agreement in respect of alleged grievance and remedy. The decision of the arbitrator shall be based solely upon the evidence and arguments presented to him by the respective parties in the presence of each other. The decision of the arbitrator within the limits herein prescribed shall be final and binding upon the parties to the dispute. The parties shall share costs of the arbitrator equally.

Section 2. Grievances, which are not timely in accordance with any of the conditions set forth in the procedures of this Article, shall be waived for all purposes. The Employer and the Union agree to meet and review all cases prior to Arbitration in an effort to reach settlement.

Section 3. Time limits set forth above may be extended by mutual consent of the parties.

## ARTICLE 8. MANAGEMENT RIGHTS

The management of the business, the direction of working forces, the right to assign work, schedule production, hire, transfer, promote, demote, discipline, suspend, discharge for cause, and determine qualifications of any Employees, to relieve Employees from duty because of lack of work or for other legitimate reasons and to establish, amend, and enforce the necessary rules and regulations for conduct and safety, are vested solely and exclusively with and retained by the Company, except as specifically modified by the terms of this Agreement.

# ARTICLE 9.  PROTECTION OF RIGHTS

**Section 1.**  It shall not be a violation of this Agreement, and it shall not be cause for discharge or disciplinary action in the event an Employee refuses to enter upon any property involved in a lawful primary labor dispute or refuses to go through or work behind any lawful primary picket line, including the lawful primary picket line of the Union party to this Agreement, and including lawful primary picket lines at the Employer's places of business.

**Section 2.**  It shall not be a violation of this Agreement and it shall not be a cause for discharge or disciplinary action if an Employee refuses to perform any service which his Employer undertakes to perform as an ally of an employer or person whose Employees are on lawful strike, and which service, but for such strike, would be performed by the Employees of the employer or person on strike.

**Section 3.**  In the event any governmental agency requires the Employer to perform services in places where there is a lawful or unlawful primary picket line, because of sanitation, health or fire hazards, the Employees covered by this Agreement shall be required to perform said services and the provisions of Section 1 and Section 2 of this Article shall not apply.  In such an event the Employer must notify the Union of the governmental agency that has made the order requiring services be rendered, such as school or hospital.

# ARTICLE 10.  LEAVES OF ABSENCE

**Section 1.**  Any Employee desiring leave of absence from his employment shall secure written permission from the Employer.  The maximum leave of absence shall be for ninety (90) days and may be extended for like periods.  Permission for it must be secured from the Employer with a copy sent to the Union.  Employees requesting leaves for periods of more than thirty (30) days may be required to utilize all unused vacation and sick leave.

**Section 2.**  During the period of absence, the Employee shall not engage in gainful employment, unless mutually agreed to between the Employer and the Employee.  Failure to comply with this provision shall result in the complete loss of seniority rights for the Employee involved.  Inability to work because of proven sickness or injury shall not result in loss of seniority rights, provided the period of absence does not exceed twelve (12) months.

**Section 3.**  F.M.L.A.  Eligible Employees must have been employed by the Employer for a period of twelve (12) months and have worked at least 1250 hours over the previous twelve (12) month period.  Eligible Employees may be granted an unpaid leave of absence up to a total of twelve (12) weeks for one of the following reasons: for the birth or placement of a child for adoption or foster care; to care for an immediate family member (spouse, child, or parent) with a serious health condition; to take medical leave when the Employee is unable to work because of a serious health condition.  At the Employee's option unused or accrued time may be used.

**Section 4.**  A Union member elected or appointed to serve as a paid Union official shall be granted a leave of absence during the period of such employment without discrimination or loss of seniority and without pay.

The maximum leave of absence of this section shall be for twelve (12) months.

## ARTICLE 11.  SUBCONTRACTING

No work covered by this contract shall be subcontracted or assigned to any subcontractor or contractor, person or entity, where to do so would cause the layoff of any bargaining unit Employee on the seniority list of the Employer.

## ARTICLE 12.  SUCCESSOR

The Employer agrees to give written notice of the existence of this Agreement to any purchaser or transferee, lessee or assignee and to notify the Union in writing to the effective date of any such action.

## ARTICLE 13.  NO STRIKE

During the term of this Agreement, or any extension of this Agreement, the Company shall not lock out the Employees covered by this Agreement, and no strike shall be caused or sanctioned by the Union or its members and neither the Union nor any of its members or representatives nor any Employee shall call, cause, authorize, ratify or engage in any sit down, sympathy strike, stay in or other strike, picketing walkout, slow down or work stoppage or any other interference with production or stoppage of work.

Notwithstanding the restriction set out in this Agreement, Employees covered by this Agreement may refuse, without being subject to discipline by the Employer, to cross a primary picket line sanctioned by the Union (which the parties agree does not include hand-billing, recognitional picketing, consumer or informational picketing or any similar concerted activity other than a work stoppage between the Union and the primary employer) at a place of business, other than a place of business owned, managed, operated or leased, in whole or in part, by Company, or any Company affiliate, parent, partner, or subsidiary, or other business in which the Company may have a financial interest. Where an Employee elects not to cross a picket line, only as permitted herein, (i.e. picket line at a non-Company/affiliate), Company may use non-bargaining unit personnel to service the stop behind the picket line.

The parties understand and agree that this does not limit the existing rights of Employees under Article 9, which provides that it shall not be a violation of this Agreement, and it shall not be cause for discharge or disciplinary action in the event an Employee refuses to enter upon any property involved in a primary labor dispute, or refuses to go through or work behind any primary picket line, including the primary picket line of Unions party to this Agreement, and including primary picket lines at the Employer's places of business.  It shall not be a violation of Articles 9 or 13 if the Union responds to an Employee's inquiry by explaining Employees' rights under Article 9.

## ARTICLE 14.  HOLIDAYS

Section 1.  The following holidays shall be granted to the regular Employees without reduction in pay, regardless of which day of the week the holiday falls and shall be paid to any Employee who is on the payroll of the Employer for a period of thirty (30) calendar days and who works on the regular workdays immediately preceding and following such holidays (unless excused by the Employer).  Employees shall be paid for such holiday on the basis of eight (8) hours at their

regular straight time rates of pay, set forth in this Agreement when no work is performed on such holidays.

New Year's Day                    Labor Day

Memorial Day                      Thanksgiving Day

Fourth of July                    Christmas Day

(2) Floating Holidays

**Section 2.** Employees required to work any of the foregoing holidays shall receive in addition to their regular holiday allowance, a guarantee of eight (8) hours work at one and one-half (1 1/2) times their regular rate of pay. If additional employees not regularly scheduled to work are needed to work a Holiday, the Company shall post requests for such Holiday work at least seven (7) calendar days before the Holiday. If an insufficient amount of volunteer Employees are available, the Company will assign such Holiday work by seniority from the bottom of the seniority list. A regular Employee who is laid off or terminated by the Employer less than fifteen (15) calendar days prior to a holiday shall be entitled to holiday pay, and he shall receive pay for that holiday at the time of layoff or termination.

**Section 3.** In addition, holidays shall be considered as time worked for the purpose of computing daily and/or weekly overtime. Any holiday that falls on a Saturday shall be paid for at straight time rate of pay as set forth in this Agreement. When a holiday falls on a Sunday, the Monday immediately following the holiday shall be observed as the holiday.

**Section 4.** When a holiday falls during an Employee's vacation period, the Employee shall receive an additional day's vacation or pay in lieu thereof.

**Section 5.** Employees shall select their Floating Holidays and Personal Days during the vacation selection process. Any Employee desiring to take a Floating Holiday or Personal Day not previously selected in the vacation selection process must provide the Employer with at least one week advance notice. The Employer shall insure that an adequate number of Employees are allowed off per day so each affected Employee will have the opportunity to use his/her Personal Days. Personal time off shall be in addition to vacation time taken. Employees shall be granted time off once selection has been made and Personal or Floating Holidays shall not be cancelled once selected. In the event an Employee elects not to take all of their Personal Days during the year, they shall receive payment for the unused days on the 2nd payroll period in December.

**Section 6.** Employees shall select their Floating Holidays during the vacation selection process. Any Employee desiring to take a Floating Holiday not previously selected in the vacation selection process must provide the Employer with at least one week's advanced notice in writing. The Employer may limit at its discretion the number of Employees utilizing at any one time a Floating Holiday. In the event an Employee elects not to take a Floating Holiday they will receive payment during the pay period prior to the second payroll period in December.

ARTICLE 15. SICK LEAVE

Section 1. It is agreed that each eligible Employee is entitled to the maximum of five (5) days sick leave with pay during each calendar year of the Agreement. In the event the Employee does not use his five (5) days sick leave (forty (40) hours of straight time at his current rate) he shall be entitled to the pay for such unused portion and said sum shall be paid to him no later than January 10th of the next calendar year. If the Employee so requests, the Employer will pay the Employee for any compensable sick days at the end of the pay week within which the Employee utilized said days.

Section 2. After six (6) months of continuous employment an Employee shall be eligible to earn, and shall earn sick leave each calendar year at the rate set forth in Section 1 hereof.

Section 3. The "six (6) month (etc.)" requirement is an eligibility requirement. An Employee who has satisfied such requirement shall be retroactively credited on a pro-rata basis for whatever portion of such six (6) months falls within the calendar year such requirement is met and shall be eligible thereafter, to draw upon sick leave so credited (and whatever additional sick leave subsequently earned, and unused, if any, that calendar year). An eligible Employee who is terminated shall receive pay for all sick leave not used at the time of termination.

ARTICLE 16. VACATION

Section 1. Regular full time employees, covered by this Agreement who have completed one (1) year of continuous service with the Employer shall be eligible for one (1) week of vacation with pay at 42 (forty-two) hours at the employer's regular straight time hourly rate of pay at the time the employee takes his vacation.

Regular full time employees, covered by this Agreement who have completed two (2) years of continuous service with the Employer shall be eligible for two (2) weeks of vacation with pay at 42 (forty-two) hours at the employer's regular straight time hourly rate of pay at the time the employee takes his vacation.

Regular full time employees, covered by this Agreement who have completed eight (8) years of continuous service with the Employer shall be eligible for three (3) weeks of vacation with pay at 42 (forty-two) hours at the employer's regular straight time hourly rate of pay at the time the employee takes his vacation.

Section 2. The time for computing the Employee's continuous service with the Employer shall commence with the Employee's last date of hire. Vacations must be taken in the year immediately following establishment of eligibility and will not be cumulative from one year to the next.

Section 3. An Employee shall receive his vacation paycheck on the payday immediately preceding the start of his vacation. The Employer shall pay on a separate check a penalty of fifty dollars ($50.00) per day for each day that the Vacation pay is delayed.

Section 4. Regular full time Employees who quit or who are discharged before the completion of any full year of employment shall be entitled to a pro-rated vacation pay allowance upon

SMTR-000-0010

severance of employment, computed upon the same formula they would have received had they completed each year of employment; provided, however, that upon termination of employment for any reason the terminated Employees shall not be entitled to such pro-rated vacation pay until they have completed the first six (6) months of employment. Pro-rated vacation pay shall be paid with final check upon severance of employment.

Section 5.  Laid off Employees, who are qualified to receive pro-rated vacation pay at time of lay-off, shall have the option of collecting accumulated pro-rated vacation pay for the portion of the employment year worked at the end of thirty (30) days following the date of such lay-off. Lay-off status of more than thirty (30) days duration shall not be counted in qualification for future vacation benefits. Should such laid off Employee, however, be recalled and returned to work within one hundred twenty (120) days of the date of such lay-off, all time accumulated prior to date of lay-off shall be used in establishing qualifications for future benefits.

Section 6.  Time lost through sickness or injury, and time off on leave of absence granted by the Employer is not to be deducted from the Employee's accrued time for vacation benefits.

Section 7.  Vacation selection shall take place from December 2nd through December 31st of each year, with vacations to be taken the following year.  Selection shall be taken in seniority order.  Failure to select your vacation during the vacation selection time frame will result in the Employee being passed by.  Employees shall be granted time off once selection has been made, and vacation time shall not be cancelled once selected.  Employees that do not select their vacation during the vacation selection process shall request their vacation after December 31 in writing, with the Employer granting such selection based on availability.  The formula for determining the number of Employees off at any one time will be the total number of weeks of vacation divided by the number of available weeks (forty-six (46)) which equals the number of Employees off per week, exclusive of Floating Holidays.

Section 8.  The Employer has the sole right to determine the number of Employees that will be on vacation in any one workweek.

## ARTICLE 17.  WESTERN CONFERENCE OF TEAMSTERS PENSION TRUST

Effective upon ratification, the Employer shall contribute into the Western Conference of Teamsters Pension Trust Fund for the account of each Employee working under this Agreement the sum of $1.25 per hour worked.

Effective October 1, 2013, the Employer shall contribute into the Western Conference of Teamsters Pension Trust Fund for the account of each Employee working under this Agreement the sum of $1.30 per hour worked.

Effective October 1, 2014, the Employer shall contribute into the Western Conference of Teamsters Pension Trust Fund for the account of each Employee working under this Agreement the sum of $1.35 per hour worked.

Effective October 1, 2015, the Employer shall contribute into the Western Conference of Teamsters Pension Trust Fund for the account of each Employee working under this Agreement the sum of $1.40 per hour worked.

Effective October 1, 2016 , the Employer shall contribute into the Western Conference of Teamsters Pension Trust Fund for the account of each Employee working under this Agreement the sum of $1.50 per hour worked.

Time paid for but not worked shall be considered as time worked for the purpose of this Article, to a maximum of 2080 hours. No payments shall be made for overtime hours.

For probationary Employees hired on or after October 1, 2007 or date of Trust acceptance, if later, the Employer shall pay an hourly contribution rate of ten cents ($0.10) during the probationary period as defined in Article 5 Section 1, but in no case for a period longer than ninety (90) calendar days from the Employees first date of hire. Contributions shall be made on the same basis as set forth in Article 17 of the Agreement. After the expiration of the probationary period as defined in Article 5 Section 1, but in no event longer than ninety (90) calendar days from an Employee's first date of hire, the contribution shall be increased to the full contractual rate.

Such payments shall be due on the first day of the calendar month for the hours of the preceding month and shall be paid not later than the fifteenth (15th) day of the following month.

The Employer agrees to accept and sign all Trust documents for the Western Conference of Teamster's Pension Trust Fund and to forward to the fund the names, Social Security numbers and the most recent date of hire of each eligible Employee along with the monthly contribution. Time paid for but not worked shall be considered as time worked for the purpose of this Article, to a maximum of two thousand eighty (2080) hours per calendar year. No payments shall be made for overtime hours.

## ARTICLE 18.  HEALTH AND WELFARE BENEFITS

SECTION 1.  HEALTH AND WELFARE: The parties hereto agree that the Employer shall for the term of this Agreement become a participant in a Trust Fund designated as the Western Alliance Trust Fund for the purpose of providing medical, dental, vision & life coverage for employees and their eligible dependents in those Plans agreed to between the Employer and the Union.

SECTION 2.  EMPLOYER CONTRIBUTION: Subject to change in the amount of contribution as hereinafter provided, the Employer shall contribute to the Trust Fund for each regular employee covered by this Agreement. Such contributions shall be used for the purpose of providing medical, dental, vision & life and/or other such coverage that may be available from the Trust Fund and mutually agreed to by the parties to this agreement.

Employer will commence contributions, for the above benefits, beginning with the first month of coverage. Monthly employer contributions shall be payable to the Western Alliance Trust on or before the twentieth (20th) day of the month preceding the month of coverage and shall be deemed delinquent if not received before the 1st day of the month for which coverage is provided. In the event contributions are not received by the tenth (10th) day of the month of coverage, the employer may be subject to an additional liquidated damages charge.

If the Trust Fund determines that the contributions set forth herein with respect to each benefit are inadequate, the Employer agrees to make such additional specific contributions as determined to be necessary and in accordance with the terms of this Article.

The Employer contribution payable to the Western Alliance Trust Fund for the above plans, effective upon notification and enrollment in the new Plan, shall be a maximum of Eight hundred Fifty dollars ($850.00) per month with Employees paying the remaining applicable amounts necessary to maintain coverage. However, in no event shall the employer contribution to any of these available plans be less than fifty dollars ($50.00) per month. Such Employer payments shall be paid and post marked no later than the twentieth (20th) day of the month.

Additional annual increases to the total monthly premium shall be paid as follows:

Effective January 1, 2014, the Employer agrees to pay up to an additional $45 per month in excess of the prior year's contribution for the plans listed above.

Effective January 1, 2015, the Employer agrees to pay up to an additional $45 per month in excess of the prior year's contribution for the plans listed above.

Effective January 1, 2016, the Employer agrees to pay up to an additional $45 per month in excess of the prior year's contribution for the plans listed above.

Effective January 1, 2017, the Employer agrees to pay up to an additional $45 per month in excess of the prior year's contribution for the plans listed above.

Additional Plan options may not be added without the mutual agreement of the Union and the Employer. In the event the Union and Employer agree to add an additional Plan to the available options , the Employer contribution shall be the amount in excess of the above stated maximums but in no event shall the Employee contribution be less than fifty dollars ($50.00) per month.

In the event that the above amounts are inadequate to maintain all of the above benefits described in this Article, any additional amount required by the Trust shall be borne by the employee. Unless agreed otherwise by the Parties, the amount borne by the employee shall be collected by means of a pre-tax payroll deduction from the employee's weekly payroll check, which deduction is authorized hereby.

SECTION 3. LEAVES OF ABSENCE FOR ILLNESS OR INJURY:

    (a)    An employee absent because of illness or off-the-job injury, who notifies the Employer of such absence, pursuant to the terms and conditions of the medical plan, will be eligible for continued coverage up to one (1) month in any one twelve (12) month period; the Employer shall continue to make the required contributions for the months of such absence.

    (b)    If an employee is injured on the job, the Employer shall continue to pay the required contribution until such employee returns to work; however, such contributions shall not be paid for a period of more than twelve (12) months beginning with the first month after contributions for active employment ceases.

(c)     However, should the employee continue to be off work and is receiving Workers Compensation Temporary Total Disability Benefits, the contributions shall continue until the employee returns to work or the employee is no longer eligible for Temporary Total Disability Benefits in accordance with State Workers Compensation Law, whichever occurs first.

SECTION 4.  EFFECTIVE DATE OF COVERAGE: The effective date of coverage is the 1st day of month following ninety (90) days of employment.

Any employee who is laid off, and who is subsequently rehired within one-year of the date of lay-off, shall be eligible for benefits to resume on the 1st of the month following the date of rehire. Employer will commence contributions beginning with the first month of coverage.

Any employee who is transferred into the bargaining unit, from an employer location which is not covered by this agreement, will be eligible for benefits using the date of hire with the employer at the prior employer location(s). In the event the employee is eligible for benefits as of the first day of work at the location covered by this agreement, coverage will begin the first of the month following the transfer date. Employer will commence contributions beginning with the first month of coverage.

SECTION 5.  TERMINATION OF COVERAGE: Anything in the foregoing Sections of this Article or in any other Section of this Agreement, to the contrary notwithstanding, the Employer at any time during the life of this Agreement, may cease contributions to the Trust Fund cited in this Article, provided the Employer and Union are in agreement and written notice is given thirty (30) days prior to the termination date.

ARTICLE 19.  DRIVE AUTHORIZATION AND DEDUCTION

The Employer agrees to deduct from the paycheck of all Employees covered by this Agreement, voluntary contributions to DRIVE. DRIVE shall notify the Employer of the amounts designated by each contributing Employee that are to be deducted from his/her paycheck on a weekly basis for all weeks worked. The phrase "weeks worked" exclude any week other than a week in which an Employee earned a wage. The Employer shall transmit to DRIVE National Headquarters on a monthly basis, in one check the total amount deducted along with the name of each Employee on whose behalf a deduction is made, the Employee's Social Security number and the amount deducted from the Employee's paycheck. The International Brotherhood of Teamsters shall reimburse the Employer annually for the Employer's actual cost for the expenses incurred in administering the weekly Payroll Deduction Plan.

ARTICLE 20.  CREDIT UNION

Regular Employees covered by this Agreement may apply for membership in the Building Trades Federal Credit Union. Credit Union membership is on a voluntary basis and at the sole election of the Employee. The Employer agrees to distribute the forms necessary and to deduct the weekly amounts authorized by the Employee and forward it to the Credit Union office. The Employee may revoke membership in the Credit Union at any time by completing and signing

appropriate forms available at the Personnel Office or the Union. Once election to participate has been revoked, the Employee shall not be eligible to again participate in the Credit Union plan for a period of six (6) calendar months after the effective date of his revocation.

Notice of revocation must be received by the Employer at least one (1) week in advance of the pay period within which revocation is to be effective and changes in the amount of the Employee's contribution may be made no more than once each calendar quarter year with notice of such to be given the Employer at least one week in advance thereof. It is understood that the sole limit of the Employer's liability under this Article is to make the authorized deductions and to remit same to the Credit Union.

## ARTICLE 11.  DRIVERS LICENSE

Section 1.  All Drivers must be in possession of a valid California Driver's license of the proper class needed to perform the Driver's job duties.  Drivers are required to immediately report any changes in their commercial driving privileges.  Suspension or loss of driving privileges following conviction, plea or other final resolution of a charge for reasons related to alcohol or drug use shall be grounds for immediate discharge.  Any driver who is cited for an off duty alcohol or drug related driving offense shall report same to the Employer before his next scheduled shift.  Failure to do so may result in termination.  If a Driver has his license suspended or revoked for other reasons, he may be granted an unpaid leave of up to ninety (90) days to correct the problem.  Suspension or loss in excess of ninety (90) days shall be grounds for discharge unless otherwise required by applicable law.

Section 2.  The Driver agrees to be in compliance with any and all regulations of the U.S. Department of Transportation, California Highway Patrol, and the California Department of Transportation regarding hours, medical conditions, and required license.

## ARTICLE 12.  NON DISCRIMINATION

Section 1.  The Company and the Union agree that in the administration of this Agreement there will be no discrimination by the Company or the Union because of an Employee's race, creed, gender, religion, national origin, disability or age within the meaning of applicable State and Federal laws.  Nothing in this Agreement shall be construed to prevent the company's compliance with the Americans with Disabilities Act.  Grievances filed on the basis of discrimination shall not be subject to the arbitration procedures as set forth in Article 7 of this Agreement.

Section 2.  In this Agreement, except where the context otherwise requires or where a bona fide occupational qualification or requirement exists, words of masculine or feminine gender also refer to the opposite gender.

Section 3.  The parties agree that the principal of a "fair day's work for a fair day's pay" shall be observed at all times and the Employees shall perform their duties in a manner that best represents the Employer's interest.  The Employer will treat Employees with dignity and respect at all times.  Employees will treat each other, as well as the Employer, with dignity and respect at all times.

**ARTICLE 23.  PHYSICAL EXAMINATIONS AND TESTING FOR ALCOHOL AND CONTROLLED SUBSTANCES**

At the Company's expense and under the direction of the Company physician, physical examinations, in accord with Company specified standards and procedures, including X-rays and including, upon reasonable suspicion by the Employer that an Employee may have used marijuana or any controlled substance or have abused alcohol, and/or pursuant to local, state or federal regulations, a test to determine such use or abuse may be made of any Employee at any such time as the Company may specify. Any Employee whose test for controlled substances, including marijuana, is positive for the presence of such substance will be subject to immediate discharge.  In establishing testing procedures, the Company shall adopt as minimum standards, those standards established under DOT regulations regarding:  (a) Substances (including alcohol and controlled substances) tested for, as well as threshold levels for such tests, (b) Testing Methodology, (c) Chain of Custody Procedures, and (d) MRO Utilization and Qualifications.

**ARTICLE 24.  MAINTENANCE DEPARTMENT**

**Section 1.**  The Employer shall make every reasonable effort to assure that the maintenance area is free of workplace hazards.  If a Maintenance Department Employee reasonably believes a workplace hazard exists, the Employee should report the situation immediately to management. If a maintenance Employee reasonably believes he does not have available to him the equipment necessary to perform his assigned work, he should report that concern to management.

**Section 2.**  The Employer will make a reasonable effort to provide in house training opportunities for Maintenance Department Employees seeking to be trained to perform work other than their normal and customary job in their same classification. All Employees shall be afforded the opportunity to apply for training, with training opportunities provided in accordance with seniority as dictated by production demands.

**Section 3.**  1st Mechanics shall be compensated at two dollars ($2.00) above the rate of pay for Drivers. 2nd Mechanics shall be compensated at one dollar ($1.00) above the rate of pay for Drivers.

**Section 4.**  There shall be a tool allowance provided to each Mechanic with one or more year's seniority. The Company shall provide to each Mechanic on a semi-annual basis a three hundred dollar ($300.00) tool allowance. Employee shall receive reimbursement ten (10) days after receipt is given to Employer. In addition, the Employer shall provide all specialty tools necessary to perform work.

**Section 5.  NIGHT SHIFT DIFFERENTIAL.**  $.50 per hour for start times after 5:00 p.m.

**Section 6.**  Each Technician will be re-certified and placed into one of the above classifications. To maintain that classification and rate of pay, each Technician must maintain productivity based on standard repair times to maintain status.

**Section 7.  ASE CERTIFICATION.**  The Company will reimburse employees for the cost of successful completion of approved ASE certification.

## ARTICLE 25.  EXTRA CONTRACT AGREEMENTS

The Employer agrees not to enter into any agreement or contract with their Employees, individually or collectively, which conflicts with the provisions of this Agreement. Any such agreement shall be null and void.

## ARTICLE 26.  FUNERAL LEAVE

Employees shall be granted two (2) paid days funeral leave. It is also agreed that unused sick leave and or vacation may be utilized for the purpose of funeral leave. Such funeral leave shall be granted for immediate family and or spouse's immediate family. Immediate family shall include; children, parents, grandparents or siblings.

Employees attending an out-of-state funeral shall receive two (2) paid funeral days and three (3) unpaid funeral days. The Employer reserves the right to require proof of attendance at the out-of-town funeral if the employee takes the full five (5) days available. Any employee so desiring may use any of his Vacation days, Floating Holidays or Sick Leave to receive compensation for the three (3) unpaid days off and any additional days needed.

## ARTICLE 27.  JURY DUTY

An employee who has completed his probationary period and who is required to report for jury duty shall be entitled to leave with pay for a maximum of two (2) days as the result of such service. For each day of such leave taken, the employee will be compensated by the Company at his straight time regular hourly rate for eight (8) hours pay plus the amount received by the employee at his straight time hourly rate for eight (8) hours less the amount received by the employee (excluding mileage) from the government. An employee who reports for such service and is excused from said service shall immediately contact his immediate supervisor and report for work, if requested. In order to be paid by the company for such leave, the employee must submit to the immediate supervisor a work release executed by the administrator of the court evidencing employee has served jury duty, the duration of such service, and the amount of compensation received for such service. Employees who serve on a jury in excess of two (2) days will not be paid for the time, but will be excused for the remainder of the jury duty service. The employee shall be entitled to the two (2) days one (1) time within a one (1) year period.

ARTICLE 23. TERM

THIS AGREEMENT shall remain in full force and effect from May 21, 2013 to and including September 30, 2017 and from year to year thereafter, unless either party gives written notice of at least sixty (60) days prior to the expiration date, of a desire to modify or terminate this Agreement.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals this
_____, 2013.

PACKAGE AND GENERAL UTILITY          WASTE MANAGEMENT DISTRICTS OF
DRIVERS TEAMSTERS LOCAL              COMPTON, LONG BEACH, SUN VALLEY
UNION NO. 396

## APPENDIX "A":   SOLID WASTE

**Section 1.**  This Appendix "A" is attached to the Agreement expiring September 30, 2017, between the parties listed in the "Agreement" section on page immediately above Article I.  "Coverage of Agreement" and referenced in Article I, Section I and sets forth the minimum rates of pay for the various classifications of Employees covered by this Agreement.

**Section 2.**  Employees hired after ratification, shall upon completion of their probationary period be paid the lowest hourly wage for their classifications then in effect. Regardless of the current wage rate all Employees shall receive the following per hour increases:

| | Current Rate | Ratification | 10/1/13 | 10/1/14 | 10/1/15 | 10/1/16 |
|---|---|---|---|---|---|---|
| General Increases | | $1750 bonus | $2.50 | $2.50 | $1.50 | $3.50 |
| **Classifications:** | **Current Rate** | **Ratification** | **10/1/13** | **10/1/14** | **10/1/15** | **10/1/16** |
| Commercial Driver | $21.80 | $21.80 | 22.30 | 22.50 | 21.30 | 23.90 |
| Residential Driver | $21.80 | $21.80 | 22.30 | 22.50 | 21.50 | 23.90 |
| Roll-Off Driver | $21.30 | $21.80 | 22.30 | 22.80 | 21.30 | 23.90 |
| Scout Driver | $21.80 | $21.80 | 22.30 | 23.85 | 23.30 | 21.30 |
| Container Delivery Driver | $21.80 | $21.30 | 22.30 | 22.50 | 23.30 | 21.30 |
| Swingman/ Trashman & Helpers | $21.32 | $71.22 | 21.72 | 22.22 | 22.72 | 21.12 |
| 1st Mechanic | $23.83 | $21.88 | 24.30 | 24.80 | 25.30 | 25.90 |
| 2nd Mechanic | $22.83 | $22.83 | 21.30 | 23.80 | 24.30 | 24.90 |
| 3rd Welder | $23.38 | $23.38 | 22.88 | 23.38 | 23.83 | 24.48 |
| Bin Repair/Painter & Truck Maintenance | $21.82 | $21.82 | 22.42 | 22.92 | 21.42 | 24.82 |

**Section 3.**  Irrespective of the foregoing, the Employer may pay newly hired Employees, hired after the effective date of this Agreement, who have completed their probationary period at wage rates fifty cents ($0.50) less than provided in the scale above for the balance of the Employees first year of continuous service with the Employer.

**Section 4.**  Swing Drivers will be paid a minimum of two dollars ($2.00) per hour above the classification rate.

# Appendix B

# LIFE CRITICAL RULES

1.  Never back a vehicle with knowledge that someone is on the riding steps.

2.  Never back a dual drive vehicle from the right side without the proper mirrors, camera(s)/monitor. The Employer shall ensure all dual drive vehicles are equipped with the proper mirrors, camera(s)/monitor.

3.  Never exceed the speed limits posted or set by policy for school zones, riding steps, and stand-up right-side driving.

4.  Always comply with Hazardous Energy Control Program (LOTO) procedures.

5.  Always comply with seatbelt rules.

6.  Operating vehicles against traffic flow is prohibited.

7.  Never double side unless approved by DM and specific conditions are met. Double side exemptions shall be noted in route books.

8.  Never modify or disable equipment safety devices.

9.  Always comply with tipping floor workface rules.

10. Always apply parking brakes when exiting a vehicle.


For violations of Life Critical Rules 1, 2, 4, 6, 8, or 10, the Employer may suspend or discharge.

For violations of Life Critical Rules 3, 5, 7, or 9, the Employer may discipline as follows:

(a)   For the first violation of a Life Critical Rule, the Employer may issue either a written warning or two-day suspension.

(b)   Second violation – suspension or termination.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

DONALD TUMBLIN

         Plaintiff(s),

    v.

WASTE MANAGEMENT OF
CALIFORNIA INC, et al.


         Defendant(s).

CASE NO:
2:15−cv−09664−DSF−PLA


INITIAL STANDING ORDER

**READ THIS ORDER CAREFULLY. IT CONTROLS THIS CASE**

**AND DIFFERS IN SOME RESPECTS FROM THE LOCAL RULES.**

COUNSEL FOR PLAINTIFF SHALL IMMEDIATELY SERVE THIS

ORDER ON ALL PARTIES, INCLUDING ANY NEW PARTIES TO THE

ACTION. IF THIS CASE WAS REMOVED FROM STATE COURT, THE

DEFENDANT WHO REMOVED THE CASE SHALL SERVE THIS ORDER

ON ALL OTHER PARTIES.

**COUNSEL MUST ADVISE THE COURT IMMEDIATELY IF THE CASE**

**OR ANY PENDING MATTER HAS BEEN RESOLVED.**

///

///

1    Both the Court and counsel bear responsibility for the progress of litigation in

2    federal court. To "secure the just, speedy, and inexpensive determination" of this

3    case, Fed. R. Civ. P. 1, all counsel are ordered to become familiar with the Federal

4    Rules of Civil Procedure ("Rule __") and the Local Rules of the Central District of

5    California ("Local Rule __").

6    IT IS ORDERED:

7    **1.   Service of the Complaint**

8    The plaintiff shall promptly serve the complaint in accordance with Rule 4

9    and file the proofs of service pursuant to Local Rule 5−3.1. Although Rule 4(m)

10   does not require the summons and complaint to be served for 90 days, the Court

11   expects service much sooner. The Court will require plaintiffs to show good cause

12   to extend the service deadline beyond 90 days.

13   **2.    Presence of Lead Counsel**

14   **All lead trial counsel shall attend any proceeding set by this Court,**

15   **including all scheduling, pretrial, and settlement conferences. Unless lead**

16   **counsel's absence is excused by the Court for good cause in advance of the**

17   **hearing, or is due to an emergency that prevented prior notice, the Court**

18   **reserves the right to designate the attorney handling such proceeding as lead**

19   **counsel for all purposes. The Court does not allow appearances by telephone.**

20   **Failure of lead counsel to appear will be grounds for sanctions.**

21   **3.    Documents Filed With the Court**

22   **Typeface shall comply with Local Rule 11−3.1.1. If Times New Roman**

23   **font is used, the size must be no less than 14; if Courier is used, the size must**

24   **be no less than 12.** Footnotes shall be in typeface no less than one size smaller

25   than text size and shall be used sparingly.

26   Filings that do not conform to the Local Rules and this Order will not be

27   considered.

28   \\\

### 4.   Discovery and Discovery Cut-off

a.   <u>Compliance with Rule 26(a)</u>: The Court encourages counsel to agree to begin to conduct discovery actively <u>before</u> the scheduling conference. The parties should comply fully with the letter and spirit of Rule 26(a) and obtain and produce most of what would otherwise be produced in the early stages of discovery. At the scheduling conference the Court will impose strict deadlines for completion of discovery. Inability to complete discovery within the deadlines set at the conference will not constitute grounds for a continuance in the absence of good cause.

b.   <u>Discovery Motions</u>: Counsel are expected to resolve discovery disputes among themselves in a courteous, reasonable, and professional manner. All discovery matters have been referred to the assigned magistrate judge, who will hear all discovery disputes. (The magistrate judge's initials follow the district judge's initials next to the case number.) All discovery documents must include the words "DISCOVERY MATTER" in the caption to ensure proper routing. Counsel are directed to contact the magistrate judge's courtroom deputy clerk to schedule matters for hearing. Counsel should not deliver Chambers copies of these documents to this Court.

In accordance with 28 U.S.C. § 636(b)(1)(A), the Court will not reverse any order of the magistrate judge, including one imposing sanctions, unless it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.

Any party may file and serve a motion for review and reconsideration before this Court. The moving party must file and serve the motion within 14 days of service of a written ruling or within 14 days of an oral ruling that the magistrate judge states will not be followed by a written ruling. The motion must specify which portions of the ruling are clearly erroneous or contrary to law and support the contention with points and authorities. Counsel shall deliver a paper chambers copy of the moving papers and responses to the magistrate judge's courtroom deputy clerk no later than the day after filing.

**5.** **E–Filing Requirements**

a. <u>Applicable Rules</u>: Counsel shall e–file all filings pursuant to Rule 5(d)(3), Local Rule 5–4, and General Order 10–07.

b. <u>Method of filing</u>: All items that do not require the Court's signature shall be e–filed in .pdf format. All proposed signature items shall be e–filed as an attachment to the main document in .pdf format.

c. <u>Use of Chambers E–Mail</u>: All proposed signature items must be e–mailed to the Chambers e–mail address at dsf_chambers@cacd.uscourts.gov in WordPerfect (preferred) or Word format. A .pdf convertible to one of these formats is **not** acceptable. Parties seeking a proposed order based on a stipulation or an ex parte application should e–mail **both** the order and the stipulation or ex parte application. Parties should not e–mail the accompanying documents for other proposed signature items (such as a motion to dismiss) unless requested by the Court.

Proposed orders must be on pleading paper and should not contain attorney names, addresses, etc. on the caption page, should not contain a footer with the document name or other information, and should not contain a watermark or designation of the firm name, etc. in the margin.

d. <u>Mandatory Paper Chambers Copies</u>: Paper Chambers copies of all e–filed documents (except proofs of service) must be delivered to Judge Fischer's box across from the Clerk's office on the first floor of the Roybal Federal Building. Paper Chambers copies must be "blue–backed," with the title of the document on the lower right hand corner of the "blue–back," and must be "two–hole punched" at the top. Paper Chambers copies must be submitted no later than noon on the day after the e–filing. **Documents will not be considered until paper Chambers copies are submitted, so paper Chambers copies of all documents for which priority processing is requested should be submitted on the same day as the filing.** For security reasons, documents should be removed from envelopes.

-4-

1   **Attach the notice of e-filing to the BACK of the paper Chambers copy. Paper**

2   **Chambers copies** delivered by Federal Express should <u>not</u> require the signature of

3   the recipient. Paper Chambers copies are mandatory. Sanctions may be imposed

4   for failure to provide paper Chambers copies.

5         **6.**    <u>**Proposed Protective Orders and Filings Under Seal**</u>

6         Proposed protective orders pertaining to discovery must be submitted to the

7   assigned magistrate judge. Proposed protective orders should not purport to allow,

8   without further order of this Court, the filing under seal of pleadings or documents

9   filed in connection with a dispositive motion (including a class certification motion)

10  or trial before Judge Fischer. The existence of a protective order does not alone

11  justify the filing of pleadings or other documents under seal, in whole or in part.

12        An application to file documents under seal must meet the requirements of

13  Local Rule 79-5. Documents that are not confidential or privileged in their entirety

14  should not be filed under seal if the confidential portions can be redacted and

15  filed separately with a reasonable amount of effort. The parties should file both a

16  complete version of the pleadings and documents under seal, and a redacted version

17  for public viewing, omitting only such portions as the Court has ordered may be

18  filed under seal.

19        There is a strong presumption of access in civil cases. *Foltz v. State Farm*

20  *Mut. Auto. Ins. Co.,* 331 F.3d 1122, 1135 (9th Cir. 2003). For each document or

21  other type of information sought to be filed under seal, the party seeking protection

22  must identify and discuss the factual or legal justification for the Court to find

23  "good cause" or "compelling reasons," as appropriate, that such document or type

24  of information should be protected. *Kamakana v. City and County of Honolulu,*

25  447 F.3d 1172, 1179-80 (9th Cir. 2006).

26        **Sealing must be justified for <u>each individual item</u> to be sealed or redacted;**

27  **blanket claims of confidentiality are not allowed and will result in a denial of**

28  **the application to seal. Counsel are strongly encouraged to consider carefully**

1    whether sealing or redaction is required for a given piece of evidence or

2    argument. <u>The inclusion of clearly meritless requests to seal or redact</u>

3    <u>documents may result in the complete rejection of an application to seal.</u>

4         Documents that are not confidential or privileged in their entirety will not be

5    filed under seal if the confidential portions can be redacted and filed separately.

6    The application to file documents under seal should include an explanation of why

7    redaction is not feasible.

8         If a party wishes to file a document that has been designated confidential by

9    another party, the submitting party must give any designating party five calendar

10   days notice of intent to file. If the designating party objects, it should notify the

11   submitting party and file an application to file documents under seal within two

12   court days.

13        If the Court grants an application to file documents under seal, the Court's

14   mandatory paper chambers copies must include a complete version of the

15   documents with an appropriate notation identifying the document or the portion

16   of the document that has been filed under seal.

17        **7.   Motions – General Requirements**

18        a.   <u>Time for Filing and Hearing Motions</u>: Motions will be heard no sooner

19   two weeks after the deadline for filing the reply. Therefore, motion papers must be

20   filed and served not later than 28 days before the hearing date. The Court expects

21   that the parties will agree to an increased filing schedule for motions for summary

22   judgment. Opposition papers must be filed and served not later than 21 days before

23   the hearing date. Reply papers must be filed and served not later than 14 days

24   before the hearing date. The remaining requirements of Local Rule 7 shall apply.

25   This Court hears motions on Mondays, beginning at 1:30 p.m. If Monday is a court

26   holiday, motions will be heard on the next Monday. If the motion date selected is

27   not available, the Court will issue a minute order continuing the date. Opposition

28   papers due on a Monday holiday may be filed the following Tuesday. In such cases,

1 | reply papers may be filed on the next Tuesday.

2 |     Adherence to the timing requirements is mandatory for Chambers' preparation

3 | of motion matters. The parties may stipulate to a different briefing schedule, so

4 | long as the schedule provides at least two weeks between the filing of the reply

5 | and the hearing date.

6 |     **If the parties are able to resolve the issue, or if a party intends to**

7 | **withdraw or declines to oppose a motion, the party(ies) must notify the court**

8 | **as soon as possible, but no later than seven days before the hearing date.**

9 | **Failure to oppose a motion will likely result in the motion being granted**

10 | **immediately after the opposition would have been due.**

11 |     b.   <u>Pre–filing Requirements</u>: Counsel **must** comply with Local Rule 7–3,

12 | which requires counsel to engage in a pre–filing conference "to discuss thoroughly

13 | . . . the substance of the contemplated motion and any potential resolution."

14 | Counsel should discuss the issues to a sufficient degree that if a motion is still

15 | necessary, the briefing may be directed to those substantive issues requiring

16 | resolution by the Court. **The *pro per* status of one or more parties does not**

17 | **eliminate this requirement. Failure to comply with this Rule will be grounds**

18 | **for sanctions. If fault is attributed to the moving party, the Court may decline**

19 | **to hear the motion.**

20 |     c.   <u>Length and Format of Motion Papers</u>: Memoranda of points and

21 | authorities in support of or in opposition to motions shall not exceed 25 pages.

22 | Replies shall not exceed 12 pages. Only in rare instances and for good cause shown

23 | will the Court grant an application to extend these page limitations. All exhibits

24 | must be separated by a tab divider on the right or bottom of the document. If

25 | documentary evidence in support of or in opposition to a motion exceeds 50 pages,

26 | the evidence submitted to Chambers must be in a separately bound and tabbed

27 | pleading and include a Table of Contents. If such evidence exceeds 200 pages,

28 | the Chambers copy of such evidence shall be placed in a Slant D–Ring binder,

1 including a Table of Contents, with each item of evidence separated by a tab

2 divider on the right side or the bottom. All documents contained in the binder must

3 be three−hole punched with the oversized 13/32' hole size, not the standard 9/32'

4 hole size.

5      d.   <u>Citations to Case Law</u>: Citations to case law must identify not only the

6 case cited, but the specific page referenced. When citing to legal databases (which

7 is not encouraged), whenever possible cite to Westlaw rather than Lexis.

8      e.   <u>Citations to Other Sources</u>: Statutory references should identify with

9 specificity the sections and subsections referenced (e.g., Jurisdiction over this cause

10 of action may appropriately be found in 47 U.S.C. § 33, which grants the district

11 courts jurisdiction over all offenses of the Submarine Cable Act, whether the

12 infraction occurred within the territorial waters of the United States or on board a

13 vessel of the United States outside said waters). Statutory references that do not

14 specifically indicate the appropriate section and subsection (e.g., Plaintiffs allege

15 conduct in violation of the Federal Electronic Communication Privacy Act, 18

16 U.S.C. § 2511, et seq.) are to be avoided. Citations to treatises, manuals, and other

17 materials should include the volume, section, and pages being referenced. If these

18 are not readily accessible, copies should be attached. This is especially important

19 for historical materials, e.g., older legislative history.

20      f.   <u>Oral Argument</u>: If the Court deems a matter appropriate for decision

21 without oral argument, the Court will notify the parties in advance.

22      g.   <u>Calendar Conflicts</u>: Counsel are to inform opposing counsel and the

23 courtroom deputy clerk (via Chambers e−mail) as soon as a potential calendar

24 conflict is discovered. Counsel should attempt to agree on a proposed date to

25 accommodate the calendar conflict and the schedules of the counsel and the Court.

26      h.   <u>Telephone Inquiries</u>: Telephone inquiries regarding the status of a motion,

27 stipulation, or proposed order will receive no response. Counsel may register for

28 Pacer access to monitor the Court's database. See www.cacd.uscourts.gov>General

1   Information>Pacer Access. Counsel are referred to the Court's website at

2   www.cacd.uscourts.gov>Judges' Procedures and Schedules> Hon. Dale S. Fischer

3   for further information regarding procedures and preferences.

4      **8.   Specific Motion Requirements**

5         a.   Motions Pursuant to Rule 12: Motions to dismiss are strongly

6   discouraged. Many motions to dismiss or to strike can be avoided if the parties

7   confer in good faith (as required under Local Rule 7–3), especially for perceived

8   defects in a complaint, answer, or counterclaim that could be corrected by

9   amendment. *See Chang v. Chen,* 80 F.3d 1293, 1296 (9th Cir. 1996) (where a

10   motion to dismiss is granted, a district court should provide leave to amend unless

11   it is clear that the complaint could not be saved by any amendment). Moreover,

12   plaintiff has the right to amend the complaint within 21 days after service, or 21

13   days after service of a responsive pleading or a motion under Rule 12(b), (e) or (f),

14   whichever is earlier. Fed. R. Civ. P. 15(a). (Neither a stipulation nor the Court's

15   permission is required.) Even after these deadlines have passed, the Federal

16   Rules provide that the Court should "freely give leave [to amend] when justice so

17   requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit requires that this policy

18   favoring amendment be applied with "extreme liberality." *Morongo Band of*

19   *Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir. 1990).

20         These principles require that plaintiff's counsel carefully evaluate defendant's

21   contentions as to the deficiencies in the complaint. In most instances the parties

22   should agree to any amendment (if agreement is required) that would cure the

23   defect.

24         These provisions apply as well to motions to dismiss a counterclaim, answer,

25   or affirmative defense.

26         b.   Amended Complaints: In addition to the requirements of Local Rule 15,

27   all amended pleadings shall be serially numbered to differentiate the amendments

28   from previous amendments.

c.   <u>Motions for Summary Judgment</u>: Parties should not wait until the motion cut–off to bring motions for summary judgment or partial summary judgment. As previously stated, the Court expects that the parties will agree to an increased filing schedule for motions for summary judgment. Because summary judgment motions are fact–dependent, parties should prepare papers in a fashion that will assist the Court (*e.g.,* generous use of tabs, tables of contents, headings, indices, etc.). The parties are to comply precisely with Local Rule 56–1 through 56–3.

Multiple motions for summary adjudication by the same party are highly disfavored. Any party wishing to file more than one motion for summary adjudication must move for leave of court and explain why the issues cannot be addressed in a single motion. If multiple motions for summary adjudication are filed by the same party without leave of court, the first filed motion will be considered and the subsequent motions stricken.

1.   <u>Separate Statement of Uncontroverted Facts and Conclusions of Law</u>: The separate statement shall be prepared in a two–column format. The left–hand column sets forth –– in sequentially–numbered paragraphs –– the allegedly undisputed fact. The right–hand column sets forth the evidence that supports that fact. Each paragraph should contain a narrowly–focused statement of fact addressing a single subject as concisely as possible. **The moving, opposing, and reply papers should refer to the numbered paragraphs in the separate statement, rather than the underlying evidence.**

2.   <u>Statement of Genuine Disputes</u>: The opposing party's statement of genuine disputes must be in two columns. The left–hand column must restate the opposing party's allegedly undisputed fact and track the moving party's separate statement exactly as filed. The right–hand column must state whether the fact is undisputed or disputed. The opposing party may dispute all or only a portion of the statement of fact. If disputing only a portion, the statement of genuine disputes must clearly indicate what part is being disputed, followed by the opposing party's

1 | evidence controverting the fact. The opposing party should not avoid admitting an

2 | undisputed fact by avoiding the issue. Only good faith disputes should be included.

3 | The Court will not wade through a document to determine whether a fact really

4 | is in dispute. To demonstrate that a fact is disputed, the opposing party must briefly

5 | state why it disputes the moving party's asserted fact, cite to the relevant exhibit

6 | or other evidence, and describe what in that exhibit or evidence refutes the asserted

7 | fact. No legal argument should be set forth in this document. The opposing papers

8 | should refer to the numbered paragraphs in the separate statement, rather than the

9 | underlying evidence.

10 |     The opposing party may also submit additional material facts that bear on or

11 | described relate to the issues raised by the movant, which shall follow the format

12 | above for the moving party's separate statement. These additional facts shall

13 | continue in sequentially–numbered paragraphs and shall set forth in the right–hand

14 | column the evidence that supports that statement.

15 |     3.   <u>Supporting Evidence</u>: No party should submit evidence other than the

16 | specific items of evidence or testimony necessary to support or controvert a

17 | proposed statement of undisputed fact. For example, entire deposition transcripts,

18 | entire sets of interrogatory responses, and documents that do not specifically

19 | support or controvert material in the separate statements should not be submitted

20 | in support of or opposition to a motion for summary judgment. The Court will not

21 | consider such material. When submitting portions of deposition transcripts and

22 | other lengthy documents, however, the parties should be sure to provide <u>all</u> pages

23 | necessary to put the cited portion in context.

24 |     Evidence submitted in support of or in opposition to a motion should be

25 | submitted either by way of stipulation or as exhibits to declarations sufficient to

26 | authenticate the proffered evidence, and should not be attached to the memorandum

27 | of points and authorities. Documentary evidence as to which there is no stipulation

28 | regarding foundation must be accompanied by the testimony, either by declaration

1 or properly authenticated deposition transcript, of a witness who can establish

2 authenticity. The pleadings should refer to the exhibits by exhibit number only,

3 or by exhibit number and title of document —— not merely by the title of the

4 document. For example, if Exhibit 1 is the License Agreement, the papers should

5 refer to "the License Agreement attached as Exhibit 1," or "Exhibit 1," not "the

6 License Agreement."

7    4.    Objections to Evidence: If a party disputes a fact based in whole or

8 in part on an evidentiary objection, the ground of the objection, as indicated above,

9 should be stated in the separate statement, but not argued in that document.

10 Evidentiary objections are to be addressed in a separate memorandum to be filed

11 with the opposition or reply brief. This memorandum should be organized to track

12 the paragraph numbers of the separate statement and statement of genuine disputes

13 in numerical sequence. It should identify the specific item of evidence to which

14 objection is made, and a brief argument with citation to authority as to why the

15 objection is well-taken. The following is the suggested format:

16    Separate Statement Paragraph 1: Objection to the supporting

17    deposition transcript of Jane Doe at 1:1—10 on the grounds that the

18    statement constitutes inadmissable hearsay for which no

19    exception applies. To the extent it is offered to prove her state of

20    mind, it is irrelevant because her state of mind is not in issue.

21    Fed. R. Evid. 801, 802.

22 **Do not submit blanket or boilerplate objections to the opponent's statements**

23 **of undisputed fact. The objections will be overruled and disregarded.**

24    d.    Motions for Attorneys' Fees: In addition to any other requirements

25 imposed by statute or case law, motions for attorneys' fees must comply with the

26 following.

27    1.    Conference of Counsel: Prior to filing any motion for attorneys' fees,

28 the moving party ("Movant") shall contact opposing counsel ("Respondent") to

1   discuss thoroughly the substance of the contemplated motion pursuant to Local

2   Rule 7–3. This conference of counsel must occur at least 21 days prior to the filing

3   of the motion. At least seven days prior to the conference of counsel:

4         (A)   Movant shall provide Respondent with the billing records

5                 on which the motion will be based, and shall specify the

6                 hours for which compensation will and will not be sought.

7                 These records may be redacted to prevent disclosure of

8                 material protected by the attorney–client privilege or work

9                 product doctrine.

10        (B)   Movant shall inform Respondent of the hourly rates that

11                will be claimed for each lawyer, paralegal, or other person.

12                If Movant's counsel or other billers have performed any

13                legal work on an hourly basis during the period covered by

14                the motion, Movant shall provide representative business

15                records sufficient to show the types of litigation in which

16                such hourly rates were paid and the rates that were paid in

17                each type, including a properly redacted fee agreement

18                under which they provided services in this action. If

19                Movant's counsel has been paid on an hourly basis in the

20                case in question or in litigation of the same type as the case

21                in question, records showing the rates paid for those

22                services must be provided. If Movant will rely on other

23                evidence to establish appropriate hourly rates, such as

24                evidence of rates charged by attorneys of comparable

25                experience and qualifications or evidence of rates used in

26                previous awards by courts or administrative agencies,

27                Movant shall provide such other evidence.

28        (C)   Movant shall furnish the evidence that will be used to

support the related nontaxable expenses to be sought by the motion.

By providing the opposing party with information about the party's hours, billing rates, and related nontaxable expenses, no party shall be deemed to make any admission or waive any argument about the relevance or effect of such information in determining an appropriate award.

All information furnished by any party under this section shall be treated as strictly confidential by the party receiving the information. The information shall be used solely for purposes of the fee litigation, and shall be disclosed to other persons, if at all, only in court filings or hearings related to the fee litigation. A party receiving such information who proposes to disclose it in a court filing or hearing shall provide the party furnishing it with prior written notice and a reasonable opportunity to request an appropriate protective order.

2.   Form of Motion: The parties are to produce a Joint Statement for submission. At least seven days prior to the conference of counsel, Movant shall provide to Respondent a draft of its portion of a Joint Statement that will eventually be submitted to the Court. The Joint Statement shall be formatted as a spreadsheet in Microsoft Excel, or a table in WordPerfect or Microsoft Word. The spreadsheet or table must include columns to identify: (1) the date of each time entry; (2) the biller for each time entry; (3) a brief description of the task; (4) the number of hours requested by the Movant for the task; (5) the number of hours, if any, Respondent believes should be awarded for the task; and for disputed items (6) a brief summary of Movant's position; and (7) a brief summary of Respondent's position. A separate spreadsheet or table shall be prepared for any nontaxable costs sought by Movant. The spreadsheet or table of nontaxable costs must include columns to identify: (1) the item; (2) the amount sought by Movant for the item; (3) the amount, if any, Respondent believes should be awarded for the item; and for disputed items (4) a

///

2  brief summary of Movant's position; and (5) a brief summary of Respondent's
   position.

3      Following the conference of counsel, and no more than 14 days prior to the

4  filing of the Motion, Movant shall provide to Respondent the final version of its

5  portion of the Joint Statement in an electronic format. Respondent shall then input

6  its portion of the Joint Statement into the document and return the completed

7  document to Movant at least seven days prior to the filing of the Motion. Movant

8  shall then file the Joint Statement at the same time it files the Motion. In addition

9  to filing the Joint Statement, Movant shall email an electronic version of the Joint

10 Statement to this Court's chambers ECF email inbox.

11     Attorneys who may be seeking an award of fees should maintain time,

12 expense, and cost records in accordance with the order on the Court's website.

13 **N.B. <u>PLEADINGS THAT FAIL TO COMPLY WITH THE ABOVE</u>**

14 **<u>FORMAT MAY NOT BE CONSIDERED.</u>**

15     **9.    <u>Proposed Orders</u>**

16     Each party filing or opposing a motion or seeking the determination of any

17 matter shall serve and lodge a Proposed Order setting forth the relief or action

18 sought and a brief statement of the rationale for the decision with appropriate

19 citations. The proposed order must be in the form described in paragraph 5.c.

20     **10.    <u>Telephonic Hearings</u>**

21     The Court believes it is extremely useful for counsel to appear personally at

22 motions, scheduling conferences, etc. Therefore, it is unlikely that the Court would

23 agree to conduct such matters by telephone in the absence of an emergency, illness,

24 etc. preventing counsel from appearing in person. If an emergency occurs, counsel

25 shall attempt to contact all involved parties to advise of the situation. The attorney

26 requesting the telephonic hearing must contact the courtroom deputy clerk at the

27 earliest possible time before the date scheduled for the motion or conference to

28 seek the Court's permission to appear by telephone and to make the necessary

1 | arrangements. The Court may choose instead to continue the hearing.

2 | **11.   Ex Parte Applications**

3 | Ex parte applications are solely for extraordinary relief and are rarely justified

4 | *See Mission Power Engineering Co. v. Continental Casualty Co.,* 883 F. Supp. 488

5 | (C.D. Cal. 1995). Applications that fail to conform to Local Rules 7−19 and 7−19.1,

6 | including a statement under oath about service and opposing counsel's position,

7 | will not be considered. The moving party shall electronically serve the opposing

8 | party, if permitted, and shall also advise by telephone that such service has been

9 | made. If the opposing party has not agreed to electronic service, the moving papers

10 | must be faxed, if a facsimile number has been provided. Moving party shall also

11 | notify the opposition that opposing papers must be filed no later than 24 hours (or

12 | one court day) following such service. Failure of the opposing party to accept

13 | electronic service or to provide a facsimile number will not extend this time period.

14 | If opposing counsel does not intend to oppose the ex parte application, counsel must

15 | advise the courtroom deputy clerk by telephone and Chambers e−mail. A paper

16 | Chambers copy of moving, opposition, or notice of non−opposition papers must be

17 | hand−delivered to Judge Fischer's courtroom deputy clerk. The Court considers ex

18 | parte applications on the papers and usually does not set these matters for hearing.

19 | The application will not be considered until the paper Chambers copy has been

20 | provided. Sanctions may be imposed for misuse of ex parte applications.

21 | **12.   Applications or Stipulations to Extend the Time to File any Required**

22 | **Document or to Continue any Date**

23 | No stipulation extending the time to file any required document or to continue

24 | any date is effective until and unless the Court approves it, or unless the Federal

25 | Rules of Civil Procedure provide for an automatic extension. Both applications and

26 | stipulations must set forth:

27 | a.   The existing due date or hearing date, the discovery cut−off date, the last

28 | day for hearing motions, the pretrial conference date and trial date;

b.    Specific reasons (contained in a detailed declaration) supporting good cause for granting the extension or continuance. (A statement that an extension "will promote settlement" is insufficient. The requesting party or parties must indicate the status of ongoing settlement negotiations. The possibility of settlement ordinarily will not be grounds for continuance.);

c.    Whether there have been prior requests for extensions, and whether these requests were granted or denied by the Court; and

d.    A description of the diligence of the party seeking the continuance and any prejudice that may result if the continuance is denied.

The request must be made before the date to be continued. The Court grants continuances only on a showing of good cause. Failure to comply with the Local Rules and this Order will result in rejection of the request without further notice to the parties.

**13.    TROs and Injunctions**

Parties seeking emergency or provisional relief shall comply with Rule 65 and Local Rule 65. The Court generally will not rule on any application for such relief for at least twenty–four hours after the party subject to the requested order has been served, unless service is excused. The opposing party may file position papers in the interim.

**14.    Cases Removed from State Court**

All documents filed in state court, including documents appended to the notice of removal. *See* 28 U.S.C. § 1447(a) and (b). If the defendant has not yet answered or moved, the answer, responsive pleading, or motion filed in this Court must comply with the Federal Rules of Civil Procedure and the Local Rules of the Central District. If, before the case was removed, a motion was pending in state court, it must be re–noticed in accordance with Local Rule 7.

If an action removed to this Court contains a "form pleading" *i.e.* a pleading in which boxes are checked, the party or parties that filed the form pleading must file

1 | an appropriate pleading with this Court within 30 days of receipt of the notice of

2 | removal. This pleading must comply with the requirements of Rules 7, 7.1, 8, 9, 10,

3 | and 11.

4 | **15.    Status of Fictitiously Named Defendants**

5 |     This Court adheres to the following procedures when a matter is removed to

6 | this Court on diversity grounds with fictitiously named defendants referred to in

7 | the complaint. *See* 28 U.S.C. §§ 1441(a) and 1447.

8 |     a.    Plaintiff shall ascertain the identity of and serve any fictitiously named

9 | defendants before the date of the Rule 16(b) scheduling conference. The Court

10 | generally will dismiss Doe defendants on the date of the scheduling conference,

11 | as they prevent the Court from accurately tracking its cases.

12 |     b.    If plaintiff believes (by reason of the necessity for discovery or otherwise)

13 | that fictitiously named defendants cannot be fully identified within that period, a

14 | request to extend the time must be made in the Joint Rule 26 Report. Counsel

15 | should be prepared to state the reasons why fictitiously named defendants have

16 | not been identified and served.

17 |     c.    If a plaintiff wants to substitute a defendant for one of the fictitiously

18 | named defendants, plaintiff shall first seek the consent of counsel for all defendants

19 | (and counsel for the fictitiously named party, if that party has separate counsel). If

20 | consent is withheld or denied, plaintiff should file a motion on regular notice. The

21 | motion and opposition should address whether the matter should thereafter be

22 | remanded to the superior court if diversity of citizenship is destroyed by the

23 | addition of the newly substituted party. *See* 28 U.S.C. §1447(c) and (e).

24 | **16.    ERISA Cases Concerning Benefit Claims**

25 |     The Court will hear motions to determine the standard of review, whether

26 | discovery will be permitted, and the scope of the administrative record. There will

27 | be a court trial (usually confined to oral argument) on the administrative record.

28 | Counsel are discouraged from filing motions for summary judgment or partial

1  summary judgment on any other issue. If they choose to do so, they must

2  distinguish *Kearney v. Standard Insurance Co.,* 175 F.3d 1084, 1095

3  (9th Cir. 1999) in the moving papers and explain why summary judgment is

4  not precluded.

5       **17.   Bankruptcy Appeals**

6       Counsel shall comply with the NOTICE REGARDING APPEAL FROM

7  BANKRUPTCY COURT issued at the time the appeal is filed in the District

8  Court. The Court will determine whether oral argument will be held.

9       **18.   Communications with Chambers**

10      Counsel shall not attempt to contact the Court or its Chambers staff by

11  telephone or by any other ex parte means. Counsel may contact the **courtroom**

12  **deputy clerk** with **appropriate** inquiries. To facilitate communication with the

13  courtroom deputy clerk, counsel should list their e—mail addresses and facsimile

14  transmission numbers along with their telephone numbers on all papers.

15      **19.   Parties Appearing *in Propria Persona***

16      *Pro per* litigants are required to comply with all local rules, including Local

17  Rule 16. In this Order, the term "counsel" includes parties appearing in *propria*

18  *persona.* Only individuals may represent themselves.

19      **20.   "Notice of Unavailability"**

20      While the Court expects that counsel will conduct themselves appropriately

21  and will not deliberately schedule Court or other proceedings when opposing

22  counsel are unavailable, a "Notice of Unavailability" has no force or effect in this

23  Court. Such documents should not be filed.

24      **21.   Compliance with Local Rules and Standing Orders**

25      At all stages of the proceedings, the parties and counsel are expected to

26  comply with the Local Rules and this Court's standing orders. Before the

27  scheduling conference counsel shall review the Central District's Civility and

28  Professionalism Guidelines (which can be found on the Court's website under

"Attorney Information Attorney Admissions"). Counsel are expected to adhere to this standard of conduct. Counsel are required to advise their clients of the terms of this Order.

**CAVEAT: IF COUNSEL FAIL TO FILE THE REQUIRED JOINT RULE 26(f) REPORT, OR THE REQUIRED PRETRIAL DOCUMENTS, OR IF COUNSEL FAIL TO APPEAR AT THE SCHEDULING CONFERENCE, THE PRETRIAL CONFERENCE, OR ANY OTHER PROCEEDING SCHEDULED BY THE COURT, AND SUCH FAILURE IS NOT SATISFACTORILY EXPLAINED TO THE COURT: (1) THE CAUSE SHALL BE DISMISSED FOR FAILURE TO PROSECUTE, IF SUCH FAILURE OCCURS ON THE PART OF THE PLAINTIFF, (2) DEFAULT (AND THEREAFTER DEFAULT JUDGMENT) SHALL BE ENTERED IF SUCH FAILURE OCCURS ON THE PART OF THE DEFENDANT, OR (3) THE COURT MAY TAKE SUCH ACTION AS IT DEEMS APPROPRIATE.**

IT IS SO ORDERED.

DATED: December 16, 2015          _/s/ Dale S. Fischer_
                                  Dale S. Fischer
                                  United States District Judge

revised 5/10/12